STATE OF NORTH CAROLINA v. HERMAN ELLIS BREWINGTON

No. COA03-1654

(Filed 17 May 2005)

**1. Search and Seizure—** *Terry* **stop—motion to suppress—probable cause—detention of passenger of car**

The trial court did not err in an assault on a governmental officer with a deadly weapon and reckless driving case by denying defendant passenger's motion to suppress evidence of an alleged unlawful stop and detention by a police officer on 10 September 2002, because: (1) the trial court properly concluded that there was probable cause to stop the vehicle when the officer observed that the driver was not wearing a seatbelt in violation of N.C.G.S. § 20-135.2A(a); (2) although defendant had not been observed violating any laws at the time of the stop, it is not unreasonable under the Fourth Amendment of the United States Constitution to detain a passenger when a vehicle has been stopped due to a traffic violation committed by the driver of the car; (3) once the original purpose of the stop had been addressed, the trial court correctly determined that there was a reasonable articulable suspicion to require defendant to remain at the scene when defendant's behavior, combined with the discovery of narcotics on the driver during a consensual pat-down search, created a reasonable articulable suspicion which permitted the officer to detain defendant passenger to address the deputy's concerns; and (4) the police had probable cause to search the car based upon the discovery of illegal narcotics upon the driver's person, and even assuming the deputy did not have any authority to detain defendant at the scene, he possessed authority to detain the car at the scene.

**2. Criminal Law— instruction—right to resist unlawful arrest**

The trial court did not err in an assault on a governmental officer with a deadly weapon and reckless driving case by denying defendant's request for a jury instruction on the right to resist an unlawful arrest, because: (1) upon discovering illegal narcotics on the driver's person, the police had probable cause to search the stopped vehicle in which defendant was a passenger; and (2) at the moment defendant slid into the driver's seat of the stopped vehicle, tried to start the car, and ignored the officer's command to stop, a violation of N.C.G.S. § 14-223 occurred and defendant was subject to arrest.

STATE v. BREWINGTON

[170 N.C. App. 264 (2005)]

3. **Assault— assault on governmental officer with deadly weapon—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of assault on a governmental officer with a deadly weapon even though defendant contends he was unlawfully seized by the officer and rightfully asserted his right to resist such a seizure, because the officer had authority to arrest defendant when defendant's actions constituted a violation of N.C.G.S. § 14-223, a class 2 misdemeanor.

4. **Criminal Law— instruction—defendant not arrested as a matter of law—plain error analysis**

The trial court did not commit plain error in an assault on a governmental officer with a deadly weapon and reckless driving case by instructing the jury that defendant had not been arrested as a matter of law, because: (1) an arrest requires either physical force or, where that is absent, submission to the assertion of authority; and (2) neither occurred in this case.

5. **Criminal Law— instruction—self-defense—failure to instruct on lawfulness of arrest or defendant's right to resist arrest**

The trial court did not err by instructing the jury on the law of self-defense without instructing on the lawfulness of defendant's arrest and his right to resist it, because: (1) defendant was not arrested as he did not submit to the officer's show of authority and any physical force applied did not restrain defendant's liberty; (2) as the officer was being dragged by the car defendant was driving, the officer hit defendant with the butt of his gun in his attempt to free himself; and (3) defendant was not resisting an unlawful arrest as his attempt to remove the driver's vehicle from the scene was a violation of N.C.G.S. § 14-223.

6. **Criminal Law— instructions—no expression of opinion by trial court**

The trial court in a prosecution for assaulting a governmental officer with a deadly weapon did not impermissibly explain the application of the law to the jury or express an opinion on the evidence in violation of N.C.G.S. § 15A-1232 by instructing the jury that the law was violated if a driver was not wearing a seatbelt while driving on a public street, that a deputy would have a right to detain the car for a search if he found cocaine on the driver, and that defendant contended that he acted in self-defense.

7. **Evidence— prior crimes or bad acts—warrant for arrest from another state for probation violation**

The trial court did not err in an assault on a governmental officer with a deadly weapon and reckless driving case by admitting evidence of a warrant for defendant's arrest from the State of Virginia for a probation violation, because: (1) the outstanding warrant was admissible under N.C.G.S. § 8C-1, Rule 404(b) since it provided a possible explanation or motive for defendant's actions on 10 September 2001; and (2) although defendant contends the trial court did not instruct the jury that the evidence was admitted for a limited purpose only, defendant did not request a limiting instruction.

8. **Evidence— prior crimes or bad acts—traffic stop for possession of drug paraphernalia**

The trial court did not err in an assault on a governmental officer with a deadly weapon and reckless driving case by allowing an Ohio police officer to testify regarding a traffic stop that occurred about one month after the incident in this case, during which defendant was arrested for the possession of drug paraphernalia, because: (1) the officer's testimony that a substance found during the stop was similar to cocaine was properly allowed even though the officer was not qualified as an expert because the officer did not testify that the substance was definitely cocaine, and the officer clarified that he was expressing an opinion satisfactory to himself based upon his training and experience in law enforcement; (2) evidence of the circumstances surrounding the stop was admissible under N.C.G.S. § 8C-1, Rule 404(b) since it was evidence of defendant's modus operandi, i.e., he fled a crime scene in another person's car since he was involved in a drug offense, defendant's actions were substantially similar in both cases, and the evidence showed defendant's motive or intentions in this case to flee the scene in order to avoid arrest on outstanding warrants or to prevent the discovery of drugs or drug paraphernalia in the car or on his person; (3) even assuming the admission of the circumstances regarding defendant's arrest in Ohio was erroneous, the evidence that defendant was arrested on the outstanding warrant in Ohio and extradited to North Carolina was relevant and admissible; and (4) the admission of defendant's actions during the Ohio traffic stop was nonprejudicial error as the State presented evidence that defendant assaulted a New Hanover deputy by dragging the officer with his car.

9. **Sentencing— habitual felon—evidentiary hearing without motion from either party—not an advisory opinion**

The trial court did not issue an impermissible advisory opinion or commit plain error by conducting an evidentiary hearing prior to the beginning of the habitual felon phase when no motion for such a hearing had been properly made before the court, because: (1) the trial court has the inherent authority to conduct an evidentiary hearing outside the presence of a jury sua sponte to clarify questions of admissibility and to prevent undue delay in the proceedings; and (2) by conducting the hearing out of the presence of the jury and prior to the presentation of evidence during the habitual felon phase, the trial court was able to resolve any arguments and concerns regarding the evidence and the habitual felon proceedings before the jury proceeded without any delay.

10. **Sentencing— habitual felon—felonious possession of cocaine**

The trial court did not commit plain error by allowing a felonious possession of cocaine charge to be a predicate felony for the habitual felon indictment, because the possession of cocaine under N.C.G.S. § 90-95(d)(2) is a felony and a proper basis for an habitual felon indictment.

11. **Sentencing— habitual felon indictment—sufficiency of evidence—facsimile copy of prior conviction**

The trial court did not err by failing to dismiss the habitual felon indictment even though defendant contends the State allegedly failed to produce sufficient evidence of the third felony listed in the habitual felon indictment when the State submitted a facsimile of the prior crime indicating that defendant was found guilty of unarmed robbery in a federal court in Ohio, because: (1) a faxed, certified copy of a court record is a reliable source of a defendant's prior conviction for habitual felon purposes; (2) regardless of the fact that the possibility of receiving an unconditional discharge and having the underlying conviction set aside was part of the sentence imposed upon defendant for his felonious unarmed bank robbery conviction, defendant was convicted of a felony for habitual felon purposes; and (3) although defendant makes an argument that he may have received an unconditional discharge under 19 U.S.C.A. § 5021, thus meaning his unarmed robbery conviction was set aside, he did not present

any evidence proving with any certainty that the conviction has been set aside.

Appeal by defendant from judgments entered 17 December 2002 by Judge Anthony Brannon in New Hanover County Superior Court. Heard in the Court of Appeals 12 October 2004.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General David J. Adinolfi II, for the State.*

*McCotter, Ashton & Smith, P.A., by Rudolph A. Ashton, III and Kirby H. Smith, III, for defendant-appellant.*

HUNTER, Judge.

Hermal[1] Ellis Brewington ("defendant") presents the following issues for our consideration: Did the trial court erroneously (I) deny his motion to suppress evidence of an unlawful stop and detention by the police; (II) deny a request for a jury instruction on the right to resist an unlawful arrest; (III) admit evidence of other wrong acts and crimes in violation of Rule 404(b); and (IV) deny his motion to dismiss all charges. Defendant also presents three issues arising from the habitual felon phase of his trial: (I) Should the habitual felon indictment have been dismissed by the trial court because one of the alleged felonies was possession of cocaine; (II) did the trial court erroneously conduct an evidentiary hearing without a motion from either party; and (III) did the State produce competent evidence to prove his prior felony convictions listed in the habitual felon indictment. After careful review, we find no prejudicial error occurred in defendant's trial.

The evidence tends to indicate that at approximately noon on 10 September 2001, Deputy Michael Howe ("Deputy Howe"), a member of the New Hanover County Sheriff's Department Emergency Response Team, observed a car in which the driver was not wearing his seatbelt. Defendant was a passenger in this car. Deputy Howe ini-

---

1. We note that defendant was indicted under the name Hermal Ellis Brewington. The transcript, several trial motions and memoranda, several documents in the record on appeal, and the State's brief on appeal refer to defendant as Hermal Brewington. However, the arrest warrant and the judgments of conviction in this case refer to defendant as Herman Brewington. As we use the name on the judgment in the captions of appellate opinions, defendant's name appears as Herman Brewington on the caption. Neither party has raised any issues related to the discrepancy in the names. We do encourage the parties, however, to ensure a defendant's correct name is placed on all court documents to help facilitate appellate review.

STATE v. BREWINGTON

[170 N.C. App. 264 (2005)]

tiated a traffic stop and the car pulled into a driveway. Deputy Howe parked his police vehicle on the street in a manner that blocked the driveway. Deputy Howe approached the car and told the driver that he had been stopped due to a seatbelt violation. The driver acknowledged he was not wearing his seatbelt and produced his driver's license and registration.

Deputy Howe looked at the passenger while talking to the driver. Deputy Howe testified the passenger was vigorously chewing on a straw, starting to sweat, making jerking and quick movements with his neck and hand, and attempting to go into his left front pocket. Deputy Howe observed a bulge in that pocket and became concerned that it could be a weapon. After observing the passenger's actions, Deputy Howe asked the driver to exit the vehicle. He did not remove the passenger from the car; rather, he instructed the passenger to remain calm, to not go into his pockets, and asked the passenger his name. The passenger gave the fictitious name of Michael Allen; however, it was later determined the passenger was Hermal Brewington, the defendant in this case.

After removing the driver from the car, Deputy Howe and the driver walked to the police vehicle at the end of the driveway on the street. Deputy Howe conducted a consensual pat-down frisk of the driver to determine if he had any weapons and discovered a user's amount of crack cocaine. Intending to place the driver under arrest, he placed handcuffs on the driver and called for police back-up. He placed the evidence on the trunk of the police vehicle, placed the driver into the passenger seat of the police vehicle, and began placing a seatbelt on the driver. The defendant was still sitting on the passenger side of the driver's car. However, as Deputy Howe was placing the seatbelt on the driver, he saw defendant slide into the driver's seat of the stopped car.

Deputy Howe testified that he ran to the stopped car in order to detain the car as he did not want defendant to flee the area or drive away with the car. By the time Deputy Howe got to the front of the stopped car, defendant had started the car. The driver's side window was open. Deputy Howe told defendant "[d]on't do it" several times, meaning don't flee the scene. He then called police dispatch for further assistance and drew his weapon with his right hand. Prior to this, Deputy Howe had not drawn his weapon. He continued to give defendant verbal commands to turn the vehicle off; however, defendant continued trying to move the gear shift from park. As a result, Deputy Howe reached into the car with his left hand and reached in

between the steering wheel to grab the key. Defendant turned the steering wheel, lifting Deputy Howe's arm and body into the air. Deputy Howe's arm was stuck in the vehicle. Deputy Howe continued to request defendant to stop the car; however, defendant placed the car in reverse and started going backwards. The car hit the police vehicle. Defendant then put the car into drive and started going forward. Deputy Howe's arm remained stuck in the steering wheel and he was forced to move with the car. Deputy Howe regained his footing and began running alongside the car. Deputy Howe took his pistol, pressed it against defendant's left cheek, and told defendant he was going to shoot him. Deputy Howe then hit defendant with the gun, and after he felt like he was going under the car, he started firing his pistol. After he started shooting, his arm was freed from the car, but he continued firing his weapon. Deputy Howe fired five rounds from his pistol in approximately two seconds. Defendant was able to drive away from the scene. The testimony of two Wilmington Police Department officers that responded to the scene corroborated Deputy Howe's testimony that he was dragged by the car.

Jonathan Barfield ("Barfield"), a former New Hanover County Commissioner, was across the street showing a home for a possible rental on the day of the incident. In regards to what transpired between defendant and Deputy Howe, Barfield testified that Deputy Howe did not have his weapon drawn as he ran to the car. When he got to the side of the car, he drew his weapon and said "[g]et out from under that wheel[.]" While at the side of the car, Deputy Howe stated "[t]urn the engine off. Turn the engine off. Get out of the car. If you don't get out of the car, I'm going to shoot you." After Deputy Howe threatened to shoot defendant, the car backed up, hit Deputy Howe, and knocked him into a bush. The car hit the police vehicle, traveled between a bush and the sidewalk, and then traveled down the street. As the car was traveling between the bush and the sidewalk, Deputy Howe began firing his weapon. According to Barfield, Deputy Howe had both of his hands on the gun and never leaned into the car. Barfield also testified that he never saw Deputy Howe dragged by the car and that Deputy Howe was not in the path of the car. According to Barfield, no other officers were present when Deputy Howe was shooting.

After defendant left the scene, he attempted to sell the car at a local junkyard. The junkyard owner testified the car was "shot up" and the man was bleeding. The junkyard owner told defendant to leave and he later identified defendant from a photographic lineup.

The car was located a few days later on a highway south of Brunswick County. Analysis of the car revealed a large amount of blood saturating the front area of the car, dents on the driver's side, a broken back window, and a bullet hole in the driver's seat headrest. A trajectory expert testified that the four shots fired were consistent with a shooter firing as he was falling down.

Defendant was arrested on 10 October 2001 in Ottawa Hills, Ohio. Defendant informed the arresting officer that he had a gunshot injury that had not been treated. The officer observed an area on defendant's left shoulder that appeared to be healing and X-rays revealed defendant had a broken left arm. Defendant received medical treatment and was taken to jail. He was indicted on 25 February 2002 for felony larceny, reckless driving, driving with a revoked license, injury to personal property, and assault on a governmental officer with a deadly weapon. The State also indicted defendant as being a habitual felon. Defendant was found guilty of assault on a governmental officer with a deadly weapon and reckless driving. A mistrial was entered as to the larceny of a motor vehicle charge because the jury was unable to reach a unanimous verdict. After defendant was found guilty of having attained habitual felon status, he was sentenced to a minimum of 100 and a maximum of 129 months on the assault charge. He was sentenced to forty-five days in jail for reckless driving to run concurrently with the assault sentence. Defendant appeals.

[1] Defendant first contends the trial court erroneously denied his motion to suppress evidence of his stop and detention by Deputy Howe on 10 September 2002. Defendant argues Deputy Howe did not properly keep and detain him during his investigative stop of the driver and that defendant was free to leave the scene without interference from Deputy Howe.

"In reviewing a trial judge's ruling on a suppression motion, we determine only whether the trial court's findings of fact are supported by competent evidence, and whether these findings of fact support the court's conclusions of law." *State v. Pulliam*, 139 N.C. App. 437, 439-40, 533 S.E.2d 280, 282 (2000). "Further, 'the trial court's ruling on a motion to suppress is afforded great deference upon appellate review as it has the duty to hear testimony and weigh the evidence.' " *State v. Castellon*, 151 N.C. App. 675, 677, 566 S.E.2d 696, 697 (2002) (citation omitted). Defendant does not challenge the trial court's findings of fact in the suppression order. Thus, we review the trial court's conclusions of law.

The trial court concluded that (1) there was probable cause to stop the vehicle, (2) defendant, a passenger in the vehicle, could be detained as the driver had been lawfully stopped for a traffic violation, and (3) Deputy Howe had a reasonable articulable suspicion to require defendant to remain at the scene and not remove the vehicle after narcotics had been found on the driver.

First, the trial court correctly concluded there was probable cause to stop the vehicle. " 'A traffic stop made on the basis of a readily observed traffic violation such as speeding or running a red light is governed by probable cause.' " *State v. Wilson*, 155 N.C. App. 89, 94, 574 S.E.2d 93, 97 (2002) (citation omitted), *disc. review denied*, 356 N.C. 693, 579 S.E.2d 98 (2003). Prior to stopping the vehicle, Deputy Howe observed the driver not wearing a seatbelt, a violation of N.C. Gen. Stat. § 20-135.2A(a) (2003). Although defendant had not been observed violating any laws at the time of the stop, it is not unreasonable under the Fourth Amendment of the United States Constitution to detain a passenger when a vehicle has been stopped due to a traffic violation committed by the driver of the car. *See Maryland v. Wilson*, 519 U.S. 408, 415, 137 L. Ed. 2d 41, 48 (1997) (footnote omitted) (stating "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop"). However, a passenger may not be detained indefinitely. " 'Once the original purpose of the stop has been addressed, there must be grounds which provide a reasonable and articulable suspicion in order to justify further delay.' " *Castellon*, 151 N.C. App. at 680, 566 S.E.2d at 699 (citation omitted).

We conclude the trial court correctly determined there was a reasonable articulable suspicion to require defendant to remain at the scene. Based upon Deputy Howe's testimony during the *voir dire* hearing, the trial court found defendant was "acting in a suspicious manner. The defendant was obsessively chewing on a straw and aggressively rubbing his leg and moving his hands toward a bulge near his pants pocket. Deputy Howe asked the defendant several times for the defendant to put his hands where he could see them." Defendant's behavior combined with the discovery of narcotics on the driver during a consensual pat-down search created a reasonable articulable suspicion which permitted Deputy Howe to detain defendant to address the deputy's concerns. *See State v. McClendon*, 350 N.C. 630, 636-38, 517 S.E.2d 128, 132-34 (1999) (stating "nervousness is an appropriate factor to consider when determining whether a basis for a reasonable suspicion exists" and that "[a]fter a lawful stop,

an officer may ask the detainee questions in order to obtain information confirming or dispelling the officer's suspicions").

Additionally, the police had probable cause to search the car based upon the discovery of illegal narcotics upon the driver's person. *See State v. Isleib*, 319 N.C. 634, 638, 356 S.E.2d 573, 576-77 (1987) (stating "no exigent circumstances other than the motor vehicle itself are required in order to justify a warrantless search of a motor vehicle if there is probable cause to believe that it contains the instrumentality of a crime or evidence pertaining to a crime and the vehicle is in a public place"). "[W]here probable cause exists to search an automobile, it is reasonable (1) to seize and hold the automobile before presenting probable cause issue to a magistrate or (2) to carry out an immediate search without a warrant." *State v. Jordan*, 277 N.C. 341, 344, 177 S.E.2d 289, 291 (1970) (discussing *Chambers v. Maroney*, 399 U.S. 42, 26 L. Ed. 2d 419 (1970)). Thus, even assuming Deputy Howe did not have any authority to detain defendant at the scene, he possessed authority to detain the car at the scene, as there was probable cause to search the car. Accordingly, we conclude the trial court properly denied defendant's motion to suppress.

[2] Defendant next contends the trial court erroneously denied his request for a jury instruction regarding his right to resist an unlawful arrest. As stated, upon discovering illegal narcotics on the driver's person, the police had probable cause to search the stopped vehicle. After seeing the driver being placed under arrest after the discovery of the narcotics, defendant attempted to remove the driver's vehicle from the scene by sliding into the driver's seat and trying to start the engine. Deputy Howe commanded defendant to stop, however, defendant proceeded to start the car and began driving the car while dragging Deputy Howe. Defendant drove the car away from the scene. Defendant's actions were in violation of N.C. Gen. Stat. § 14-223 (2003), which states: "If any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office, he shall be guilty of a Class 2 misdemeanor." At the moment defendant slid into the driver's seat of the stopped vehicle, tried to start the car, and ignored Deputy Howe's command to stop, a violation of N.C. Gen. Stat. § 14-223 occurred and defendant was subject to arrest. Therefore, defendant was not resisting an unlawful arrest, and the trial court properly declined to instruct the jury as to this defense.

[3] Defendant also contends the trial court should have dismissed the felonious assault on a governmental officer charge because he

was unlawfully seized by Deputy Howe and rightfully asserted his right to resist such a seizure. As previously stated, Deputy Howe had authority to arrest defendant because defendant's actions constituted a violation of N.C. Gen. Stat. § 14-223, a class 2 misdemeanor. Therefore, the trial court did not erroneously deny defendant's motion to dismiss on this basis.

[4] Defendant also contends the trial court committed plain error in instructing the jury that defendant had not been arrested as a matter of law. Specifically, the trial court instructed:

> [T]he United States Supreme Court has ruled as a matter of constitutional law—they did that in 1991—that a police officer only arrests or seizes a person when, one, an officer has applied actual physical force to the person, that is, by touching or tackling a person by way of examples; or two, that person actually submits to the officer's show of authority.
>
> So an arrest does not occur, for example, when an officer shouts "Stop in the name of the law" and the person flees on. Whereas an arrest or seizure would occur if the person submitted or stopped as a result of the officer's verbal command.

This instruction by the trial court is a correct statement of the United States Supreme Court's holding in *California v. Hodari D.*, 499 U.S. 621, 626, 113 L. Ed. 2d 690, 697 (1991). In *Hodari D.*, the United States Supreme Court held: "An arrest requires *either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority." *Id.* The holding in *Hodari D.* has not been overruled. Thus, the trial court did not commit plain error in instructing in accordance with United States Supreme Court precedent.

[5] Defendant also argues the trial court erroneously instructed the jury on the law of self-defense, without instructing on the lawfulness of defendant's arrest and his right to resist it. First, under the United States Supreme Court's holding in *Hodari D.*, defendant was not arrested as he did not submit to Deputy Howe's show of authority and any physical force applied did not restrain defendant's liberty. *Id.* at 625-26, 113 L. Ed. 2d at 696-97. Rather, as Deputy Howe was being dragged by the car defendant was driving, Deputy Howe hit defendant with the butt of his gun in his attempt to free himself. Moreover, as previously explained, defendant was not resisting an unlawful arrest as his attempt to remove the driver's vehicle from the scene was a violation of N.C. Gen. Stat. § 14-223.

**[6]** Next, defendant contends the trial court committed plain error by summarizing the evidence and applying the law to the facts of the case. Specifically, defendant contends the trial court impermissibly explained the application of the law to the jury or expressed an opinion regarding a fact by stating (1) the law authorized Deputy Howe to stop the driver's car and to detain his car, (2) that as a matter of constitutional law, a person cannot be arrested until he has actually submitted to a police officer's show of authority, and (3) that it was defendant's contention that he was using self-defense in this matter.

> "The plain error rule applies only in truly exceptional cases. Before deciding that an error by the trial court amounts to 'plain error,' the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. In other words, the appellate court must determine that the error in question 'tilted the scales' and caused the jury to reach its verdict convicting the defendant."

*State v. Riddle*, 316 N.C. 152, 161, 340 S.E.2d 75, 80 (1986) (citations omitted). N.C. Gen. Stat. § 15A-1232 (2003) provides: "In instructing the jury, the judge shall not express an opinion as to whether or not a fact has been proved and shall not be required to state, summarize or recapitulate the evidence, or to explain the application of the law to the evidence."

Regarding the traffic stop for the seatbelt violation, the trial court instructed:

> On September 10th, 2001, *if* Officer Michael Howe saw [the driver] operating a motor vehicle on a public street in Wilmington without wearing a seat belt, *then* that, not wearing the seat belt, would be a violation of the North Carolina motor vehicle law, and the officer would have had the full legal right to stop the vehicle and give a citation to the driver.

> The officer would thereafter have had the right to have a conversation with the driver and to have further roadside involvement with him. *If* Officer Howe found what, in his opinion, based on his training and experience, was the controlled substance cocaine, the officer would have had full legal right to arrest, that is, to take into custody the driver, Nathaniel Williams, for possession of cocaine.

> At that time point, the officer would have had the legal right to detain the driver [sic], Nathaniel William's automobile, . . . , and

he could do that in order to secure the car for a full law enforce-ment search as part of investigating a controlled substance act violation which would be a duty of his office as a law enforce-ment officer.

(Emphasis added.) This jury instruction neither expresses an opinion as to whether or not a fact has been proven nor summarizes the evi-dence. Indeed, the trial court gave conditional instructions, *i.e.*, *if* the driver was not wearing a seatbelt while driving on a public street, *then* a motor vehicle law would have been violated and, *i.e.*, *if* Deputy Howe found the controlled substance cocaine on the driver, *then* he would have a right to detain the car for a search. Moreover the trial court's instruction was a correct statement of the law. Second, merely stating that defendant's contention was that he acted in self-defense is not an expression of an opinion and does not sum-marize the evidence. Furthermore, no plain error was committed because the self-defense jury instruction would not "tilt the scales" and lead to a guilty verdict. Third, we have already addressed defend-ant's contentions in reference to the trial court's instructions regard-ing when an arrest has been effectuated. The trial court's explanation of the law of arrest did not violate N.C. Gen. Stat. § 15A-1232. Accordingly, we conclude the trial court did not commit plain error in its jury instructions.

**[7]** Next, defendant argues the trial court erroneously allowed the State to present evidence of a warrant for his arrest from the State of Virginia for a probation violation. N.C. Gen. Stat. § 8C-1, Rule 404(b) (2003) provides in pertinent part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, prepara-tion, plan, knowledge, identity, or absence of mistake, entrap-ment or accident.

*Id.*

This rule is "a clear general rule of inclusion of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but one exception requiring its exclusion if its only probative value is to show that the defendant has the propensity or disposition to com-mit an offense of the nature of the crime charged." The list of per-missible purposes for admission of "other crimes" evidence is not exclusive, and such evidence is admissible as long as it is relevant

to any fact or issue other than the defendant's propensity to commit the crime.

*State v. White*, 340 N.C. 264, 284, 457 S.E.2d 841, 852-53 (1995) (emphasis omitted) (citations omitted). In this case, the outstanding warrant for defendant's arrest due to a probation violation was admissible under Rule 404(b) because it provided a possible explanation or motive for defendant's actions on 10 September 2001. Indeed, the testimony indicated defendant was acting nervous, gave the officer a fictitious name, and then fled the scene upon seeing the driver's arrest. Defendant also stated the trial court did not instruct the jury that the evidence of the outstanding arrest warrant was admitted for a limited purpose only. However, defendant did not request a limiting instruction. " '[T]he admission of evidence, competent for a restricted purpose, will not be held error in the absence of a request by defendant for a limiting instruction. Such an instruction is not required to be given unless specifically requested by counsel.' " *State v. Williams*, 355 N.C. 501, 562, 565 S.E.2d 609, 645 (2002) (citation omitted).

[8] Next, defendant argues the trial court erroneously allowed an Ohio police officer to testify regarding a traffic stop during which defendant was arrested for the possession of drug paraphernalia. Officer John Wenzlick ("Officer Wenzlick") of the Ottawa Hills, Ohio Police Department testified that defendant was a passenger in a car that was stopped for window tint and registration violations one month after the incident with Deputy Howe. The two police officers removed the driver from the stopped car and asked defendant to exit the vehicle as they were going to tow the car. As defendant exited the vehicle, Officer Wenzlick observed on the passenger's floorboard a short red straw that had one end cut at a forty-five degree angle which contained a white powdery substance similar to cocaine on one end. Defendant gave the officer a false name, date of birth, and social security number, and was arrested for falsification, giving a false name to a police officer while the police officer is conducting his official duties. Defendant was also arrested for possession of drug paraphernalia.

Defendant contends this testimony was erroneously allowed under Rule 404(b) and that Officer Wenzlick was erroneously allowed to testify that the substance was cocaine without having been qualified as an expert. First, we note that Officer Wenzlick did not testify that the substance was definitely cocaine; rather, he only testified that it was similar to cocaine. Moreover, the officer clarified that he was expressing an opinion satisfactory to himself based upon his

training and experience in law enforcement. Thus, under these facts, we find no error in this portion of Officer Wenzlick's testimony.

As to defendant's argument that the circumstances surrounding the Ohio traffic stop and arrest should not have been admitted under Rule 404(b), the State contends the testimony was evidence of defendant's *modus operandi, i.e.,* defendant fled a crime scene in another person's car because he was involved in a drug offense.

As previously stated, N.C. Gen. Stat. § 8C-1, Rule 404(b) governs the admissibility of evidence regarding " 'other crimes, wrongs, or acts[.]' " *State v. Haskins,* 104 N.C. App. 675, 679, 411 S.E.2d 376, 380 (1991). "That is, the evidence must be offered for a proper purpose, must be relevant, must have probative value that is not substantially outweighed by the danger of unfair prejudice to the defendant, and, if requested, must be coupled with a limiting instruction." *Id.* N.C.R. Evid. 404(b) provides that relevant evidence of other crimes, wrongs or acts may be admissible for other purposes, such as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." *Id.* To be relevant in a particular case, evidence of prior bad acts must be sufficiently similar to the crime charged and be temporally proximate to that crime. *See State v. Al-Bayyinah,* 356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002). This Court has, however, noted "[t]he similarities between the crime charged and the prior acts . . . need not ' "rise to the level of the unique or bizarre" ' in order to be admissible." *State v. Brothers,* 151 N.C. App. 71, 76, 564 S.E.2d 603, 607 (2002) (citations omitted).

In this case, we conclude the circumstances surrounding the traffic stop and defendant's actions in Ohio were substantially similar to defendant's actions in this case, and therefore admissible. In both traffic stops, defendant was a passenger in a car, gave fictitious information to the police, had outstanding arrest warrants at the time of each traffic stop, and the police officers noticed a straw in close proximity to defendant. In this case, defendant was observed vigorously chewing on a straw and had a large bulge in his pants pocket. Defendant was also acting nervously. In the Ohio traffic stop, the officer observed a red straw on the passenger floor that contained a white powdery substance similar to cocaine. Unlike this case, defendant neither attempted to flee nor assaulted an officer. However, the presence of two officers during the Ohio traffic stop and the untreated gunshot wound in defendant's arm may have created a situation conducive to cooperation, and not flight. Thus, the evidence of the circumstances surrounding the Ohio traffic stop was admissible

under Rule 404(b) as it was evidence of defendant's motive or intentions in this case, *i.e.*, to flee the scene in order to avoid arrest on outstanding warrants or to prevent the discovery of drugs or drug paraphernalia in the car or on his person.

Moreover, even assuming the admission of the circumstances regarding defendant's arrest in Ohio was erroneous, the evidence that defendant was arrested on the outstanding warrant in Ohio and extradited to North Carolina to face the charges in this case was relevant and admissible. We also conclude the admission of defendant's actions during the Ohio traffic stop was non-prejudicial error. Under N.C. Gen. Stat. § 15A-1443(a) (2003):

> A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant. . . .

*Id.* Under the facts of this case, in order to convict defendant of N.C. Gen. Stat. § 14-34.2 (2003), assault upon a governmental officer with a deadly weapon, the State only had to prove assault with a deadly weapon upon an officer of a political subdivision of this State. *Id.* Defendant's motive in fleeing the scene was not an element of the crime. As the State presented evidence that defendant assaulted a New Hanover deputy sheriff by dragging the officer with his car, any error committed in admitting the Ohio traffic stop evidence would have been non-prejudicial error.

**[9]** Next, defendant contends the trial court committed plain error by conducting an evidentiary hearing prior to the beginning of the habitual felon phase as no motion for such a hearing had been properly made before the court. Thus, defendant contends the trial court's actions constituted an impermissible advisory opinion.

Under N.C. Gen. Stat. § 8C-1, Rule 104(a) (2003), "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court[.]" *Id.* Any hearings concerning the admissibility of evidence shall be conducted outside the hearing of the jury when the interests of justice require. *See* N.C. Gen. Stat. § 8C-1, Rule 104(c). Furthermore, the Rules of Evidence "shall be construed to secure fairness in administration [and the] elimination of unjustifiable expense and delay . . . ." N.C. Gen. Stat. § 8C-1, Rule 102(a) (2003). Therefore, based upon these rules of evidence, we conclude the trial

court has the inherent authority to conduct an evidentiary hearing outside the presence of a jury *sua sponte* to clarify questions of admissibility and to prevent undue delay in the proceedings.

In this case, none of the convictions listed in the habitual felon indictment were from the State of North Carolina. Two of the convictions were from the State of Virginia and the third conviction was a federal conviction from the Northern District of Ohio. During the evidentiary hearing, the State called several witnesses to present proof of the prior convictions to the trial court. These witnesses explained how they obtained the documents, testified regarding corroborating evidence, and the attorneys for the State and defendant made arguments to the trial court regarding the competency of the proffered evidence. By conducting this hearing out of the presence of the jury and prior to the presentation of evidence during the habitual felon phase, the trial court was able to resolve any arguments and concerns regarding the evidence and the habitual felon proceedings before the jury proceeded without any delay. Moreover, it should be noted that the habitual felon phase began on the seventh day of trial. Under these facts, we conclude the trial court did not commit plain error in conducting an evidentiary hearing prior to the beginning of the habitual felon phase of defendant's trial in order to expedite the proceedings.

[10] Next, defendant contends the trial court committed plain error by allowing a felonious possession of cocaine charge to be a predicate felony for the habitual felon indictment in light of this Court's opinions in *State v. Sneed*, 161 N.C. App. 331, 588 S.E.2d 74 (2003), and *State v. Jones*, 161 N.C. App. 60, 588 S.E.2d 5 (2003). However, the holdings in *Sneed* and *Jones* were reversed by our Supreme Court in *State v. Jones*, 358 N.C. 473, 598 S.E.2d 125 (2004), and *State v. Sneed*, 358 N.C. 538, 599 S.E.2d 365 (2004), in which our Supreme Court held the possession of cocaine under N.C. Gen. Stat. § 90-95(d)(2) is a felony and a proper basis for a habitual felon indictment.

[11] Finally, defendant contends the habitual felon indictment should have been dismissed because the State failed to produce sufficient evidence of the third felony listed in the habitual felon indictment. N.C. Gen. Stat. § 14-7.4 (2003) states:

> In all cases where a person is charged under the provisions of this Article with being an habitual felon, the record or records of prior convictions of felony offenses shall be admissible in evi-

STATE v. BREWINGTON

[170 N.C. App. 264 (2005)]

dence, but only for the purpose of proving that said person has been convicted of former felony offenses. A prior conviction may be proved by stipulation of the parties or by the original or a certified copy of the court record of the prior conviction. The original or certified copy of the court record, bearing the same name as that by which the defendant is charged, shall be prima facie evidence that the defendant named therein is the same as the defendant before the court, and shall be prima facie evidence of the facts set out therein.

*Id.* In *State v. Wall*, 141 N.C. App. 529, 533, 539 S.E.2d 692, 695 (2000), this Court held that the terms of N.C. Gen. Stat. § 14-7.4 were permissive and do not exclude other methods of proving prior convictions for determining habitual felon status. Therefore, this Court held that a faxed, certified copy of a court record was a reliable source of a defendant's prior conviction for habitual felon purposes. *Id.*

In the case *sub judice*, the habitual felon indictment listed as the third felony: "On or about August 22, 1979 Hermal E. Brewington did commit the felony of Armed Bank Robbery and that on or about October 12, 1979 Hermal E. Brewington was convicted of the felony of Armed Bank Robbery in the District Court of for [sic] the Northern District of Ohio."[2] To prove this prior conviction, the State submitted a facsimile of a judgment and probation order from the United States District Court, Northern District of Ohio, Western Division. The facsimile indicated that a defendant, "Herman Brewington" pled guilty on 10/12/1979 to "unarmed bank robbery," a "violation of Title 18, Section 2113(a)."[3] The facsimile also contained a seal, which stated: "I hereby certify that this instrument is a true and correct copy of the original." The seal was signed by a deputy clerk of the United States District Court in the Northern District of Ohio. During the *voir dire* proceeding, the State presented defendant's criminal record check which indicated he had been convicted of the unarmed bank robbery in 1979. In light of this Court's holding in *State v. Wall*, we conclude the introduction of the facsimile copy of the judgment and probation

---

2. The trial court allowed the State to amend the habitual felon indictment to state defendant was convicted of the felony of unarmed bank robbery instead of armed bank robbery. Although defendant objected to the indictment amendment, he does not present any arguments on appeal related to the indictment amendment.

3. Defendant does not argue on appeal that there was insufficient proof of the third predicate felony because the judgment and probation order stated the defendant's name as "Herman Brewington" and not "Hermal Brewington." Thus, we treat the document as defendant's judgment and probation order.

order, which was stamped as a true copy, to prove defendant's third felony for habitual felon purposes was not error.

Defendant also argues the State could not use the 1979 federal conviction for unarmed bank robbery for habitual felon purposes because it is unclear whether this conviction was a final judgment. Under the North Carolina Habitual Felons Act:

Any person who has been convicted of or pled guilty to three felony offenses in any federal court or state court in the United States or combination thereof is declared to be an habitual felon. For the purpose of this Article, a felony offense is defined as an offense which is a felony under the laws of the State or other sovereign wherein a plea of guilty was entered or a conviction was returned regardless of the sentence actually imposed. . . .

N.C. Gen. Stat. § 14-7.1 (2003). In the case *sub judice*, the judgment and probation order indicates defendant pled guilty to unarmed bank robbery, a felony. However, the judgment and probation order also states defendant was placed in the custody of the United States Attorney General "for treatment and supervision pursuant to 18 U.S.C.A. Sec. 5010(b) until discharged by the Federal Youth Correction Division of the Board of Parole as provided in 18 U.S.C.A. Sec. 5017(c)." Therefore, defendant was sentenced as a youth offender under 18 U.S.C.A. § 5005 *et seq.* (repealed 12 October 1984). According to 18 U.S.C.A. § 5010(b) (1982):

If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the Commission as provided in section 5017(c) of this chapter[.]

*Id.* Pursuant to 18 U.S.C.A. § 5017(c) (1982):

A youth offender committed under section 5010(b) of this chapter shall be released conditionally under supervision on or before the expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction.

*Id.* Under 18 U.S.C.A. § 5021(a) (1982),

> Upon the unconditional discharge by the Commission of a com-
> mitted youth offender before the expiration of the maximum sen-
> tence imposed upon him, the conviction shall be automatically
> set aside and the Commission shall issue to the youth offender a
> certificate to that effect.

*Id.* Pursuant to these provisions, if defendant was unconditionally
discharged on or before six years from the date of his conviction,
then his conviction would have been automatically set aside. The
United States Congress' purpose in providing for the automatic set
aside of the conviction under 18 U.S.C.A. § 5021 was to provide "a
substantial incentive for positive behavior while serving a sentence
under the [Youth Corrections Act]." *Tuten v. United States*, 460 U.S.
660, 664, 75 L. Ed. 2d 359, 364 (1983) (footnote omitted). The auto-
matic set aside of a conviction "enables an eligible youth offender to
reenter society and conduct his life free from the disabilities that
accompany a criminal conviction[,]" such as increased penalties for
subsequent convictions. *Id.* at 665, 75 L. Ed. 2d at 364.

According to the habitual felon indictment and the evidence
presented by the State in this case, defendant was convicted of
unarmed bank robbery on 12 October 1979 in Ohio. Four years later,
defendant was convicted of malicious wounding/maiming in Virginia
on 19 October 1983. Thus, defendant was in the State of Virginia
within six years of his federal conviction. Whether defendant
received an unconditional discharge is not clear from the record.

As stated under N.C. Gen. Stat. § 14-7.1, for habitual felon pur-
poses, "a felony offense is defined as an offense which is a felony
under the laws of the State or other sovereign wherein a plea of
guilty was entered or a conviction was returned *regardless of the
sentence actually imposed.*" (Emphasis added.) In this case, the pos-
sibility of receiving an unconditional discharge and having the under-
lying conviction set aside was part of the sentence imposed upon
defendant for his felonious unarmed bank robbery conviction. For
habitual felon purposes, defendant was convicted of unarmed bank
robbery, a felony.

However, if a conviction has been set aside, reversed, or vacated,
it is a defense to the State's allegation that a defendant has attained
habitual felon status. The burden of showing a conviction has been
set aside, vacated, or reversed is upon the defendant. *Cf.* N.C. Gen.
Stat. § 14-7.1 (stating *the burden of proving a felony offense has been
pardoned shall rest with the defendant and the State is not required*

to disprove a pardon). Although defendant makes an argument that he may have received an unconditional discharge under 18 U.S.C.A. § 5021, and therefore, his unarmed robbery conviction had been set aside, he did not present any evidence proving with any certainty that the conviction had been set aside.[4]

In sum, we conclude defendant received a trial free of prejudicial error.

Affirmed.

Judges WYNN and McCULLOUGH concur.

---

4 If the unarmed bank robbery conviction was set aside, defendant would be entitled to file a motion for appropriate relief under N.C. Gen. Stat. § 15A-1415(b)(8) and (c) (2003).