BROOK, Judge.
 

 *107
 
 Tanya O. Cabbagestalk ("Defendant") appeals from the trial court's judgment entered following a jury trial. Defendant argues the trial court erred in denying her motion to suppress, because the police officer who stopped Defendant's car lacked reasonable
 
 *7
 
 suspicion. We agree. We therefore reverse the trial court's judgment.
 

 I. Background
 

 A. Procedural History
 

 On 20 January 2017, Hoke County Sheriff's Officer Perry Thompson ("Officer Thompson"), who was then a sergeant with the Rowland Police Department, stopped Defendant and charged her with driving while impaired ("D.W.I.") in violation of
 
 N.C. Gen. Stat. § 20-138.1
 
 . In a bench trial held on 22 September 2017 in Robeson County District Court, the Honorable William J. Moore found Defendant guilty of driving while impaired. Following judgment entered in the district court, Defendant gave notice of appeal in open court for a trial
 
 de novo
 
 in the Robeson County Superior Court.
 

 On 28 March 2018, Defendant filed a motion to suppress in Robeson County Superior Court. On 10 April 2018, the Honorable Claire V. Hill conducted an evidentiary hearing in open court without a jury, and heard arguments from the State and Defendant on Defendant's motion to suppress. Officer Thompson provided the sole testimony at the hearing.
 

 Following the trial court's denial of the motion to suppress, the Honorable Gale M. Adams presided over a jury trial during the criminal session of the Robeson County Superior Court. Officer Thompson was again the State's sole witness at trial. Defense counsel did not object to the disputed evidence. Defendant moved to dismiss at the close of the State's evidence, which the trial court denied. The jury found Defendant guilty of driving while impaired, in violation of
 
 N.C. Gen. Stat. § 20-138.1
 
 . Judge Adams imposed a Level Four punishment, sentencing Defendant to 120 days imprisonment, suspended upon 12 months of supervised probation, and ordering Defendant to complete 48 hours of community service and to complete a substance abuse program. She was also ordered to pay a community service fee of $250, and her license was revoked.
 

 Based on the prior motion to suppress that was filed and on the judgment entered, Defendant gave notice of appeal in open court. Defendant
 
 *108
 
 further expressly argued in her appellate brief that the denial of the motion to suppress constituted plain error.
 

 B. Factual Background
 

 On 20 January 2018, at "[a]pproximately" 9:00 p.m., Officer Thompson was on "routine patrol" with the Rowland Police Department when he observed Defendant "sitting on the porch" of a local residence where "everyone hangs out at," drinking a "Natural Ice ... tall can" of beer. He had known Defendant for "approximately two years," because he had previously stopped her for driving while her license was revoked, and for an open container violation. Officer Thompson was confident it was the Defendant he observed that evening drinking beer on the porch, based on prior interactions. Although it was night, he could see her because a porch light and a street light were illuminating the area, and he was only approximately ten feet away.
 

 During the suppression hearing, Officer Thompson testified that he saw Defendant at the BP store in Rowland "maybe 30 minutes to an hour later." Upon reviewing the citation he issued on cross-examination, however, he clarified that the citation reflected a stop time of "at or about 11:00 p.m." On redirect he confirmed that he saw her drinking at 9:00 p.m. and saw her an hour and a half later at the gas station, "[b]uying more beer."
 

 At the BP store, Defendant went to the beer cooler, purchased another beer, paid for it, and returned to her vehicle. Prior to being placed in a brown bag, the beverage in her hand looked to Officer Thompson like a "Natural Ice, the Ice." Officer Thompson admitted that he did not observe Defendant stumbling or otherwise walking as though she was intoxicated. Moreover, Officer Thompson did not speak to Defendant at this point, or any point prior to the traffic stop.
 

 When Defendant got back into her truck and left the gas station, Officer Thompson followed her. Defendant "took East Main Street all the way up to North MLK Street, and she made a right turn on North MLK Street." Officer Thompson admitted that Defendant drove "normal[ly]"; that is, she was not speeding, going too slowly, weaving, or swerving. Defendant also appeared to be
 
 *8
 
 wearing her seatbelt, and her lights were working. Officer Thompson did not observe Defendant drinking the beer she had purchased or violate any traffic laws, nor did he run her plates before stopping her.
 

 After following her for two to three blocks, Officer Thompson activated his blue lights as Defendant turned right on North MLK Street.
 

 *109
 
 Defendant pulled off to the side of the road without incident. Officer Thompson stated, "I stopped her because earlier that night I observed her drinking a beer. She went back in the store, bought more beer, and then decided to get under the wheel and drive."
 

 During the stop, Officer Thompson noticed a "strong odor of alcohol" on Defendant's breath, which he continued to smell once Defendant was in the officer's patrol car. Defendant admitted she had been drinking and discussed "family problems." Officer Thompson saw an unopened beer in Defendant's car. He continued his investigation at that point, performing two roadside breath tests, obtaining further information about Defendant's driver's license, and writing the ticket-a process which "[took] 15 to 20 minutes."
 

 Officer Thompson subsequently transported Defendant to the Robeson County Jail. Once at the jail, he performed another breath test with two separate "blows," the lowest reading of which was a 0.16, twice as high as the legal limit of 0.08. Following the testing, Officer Thompson completed a Driving While Impaired Report, and took Defendant before a magistrate to be charged.
 

 II. Analysis
 

 On appeal, Defendant argues the trial court lacked support for a necessary finding of fact and erred in denying her motion to suppress the evidence obtained by Officer Thompson as a result of the vehicle stop. Defendant further argues that such denial constituted plain error as, without Officer Thompson's testimony, the evidentiary basis for the jury's verdict would have been insufficient. We agree.
 

 A. Standard of Review
 

 Following a hearing on a motion to suppress, a trial judge "must set forth in the record [her] findings of facts and conclusions of law." N.C. Gen. Stat. § 15A-977(f) (2017). "An appellate court accords great deference to the trial court's ruling on a motion to suppress because the trial court is entrusted with the duty to hear testimony (thereby observing the demeanor of the witnesses) and to weigh and resolve any conflicts in the evidence."
 
 State v. Johnston
 
 ,
 
 115 N.C. App. 711
 
 , 713,
 
 446 S.E.2d 135
 
 , 137 (1994) (citation omitted). "This deference, however, is not without limitation. A reviewing court has the duty to ensure that a judicial officer does not abdicate his or her duty by merely ratifying the bare conclusions of affiants."
 
 State v. Brown
 
 ,
 
 248 N.C. App. 72
 
 , 74,
 
 787 S.E.2d 81
 
 , 84 (2016) (internal marks and citation omitted).
 

 *110
 
 "In reviewing a trial judge's ruling on a suppression motion, we determine only whether the trial court's findings of fact are supported by competent evidence, and whether these findings of fact support the court's conclusions of law."
 
 State v. Brewington
 
 ,
 
 170 N.C. App. 264
 
 , 271,
 
 612 S.E.2d 648
 
 , 653 (2005) (citation omitted). If the findings are supported by competent evidence, they are conclusive on appeal.
 
 State v. Campbell
 
 ,
 
 359 N.C. 644
 
 , 661,
 
 617 S.E.2d 1
 
 , 12 (2005).
 

 Conclusions of law are reviewed
 
 de novo
 
 and are subject to full review. Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal.
 

 State v. Crandell
 
 ,
 
 247 N.C. App. 771
 
 , 774,
 
 786 S.E.2d 789
 
 , 792 (2016) (one italics added) (quoting
 
 State v. Biber
 
 ,
 
 365 N.C. 162
 
 , 167-68,
 
 712 S.E.2d 874
 
 , 878 (2011) (citations and quotation marks omitted)).
 

 A pretrial motion to suppress is insufficient to preserve for appeal the admissibility of evidence.
 
 State v. Grooms
 
 ,
 
 353 N.C. 50
 
 , 65-66,
 
 540 S.E.2d 713
 
 , 723 (2000). Our Supreme Court has held, however, that "to the extent [a] defendant fail[s] to preserve issues relating to [his] motion to suppress, we review for plain error" if the defendant "specifically and distinctly assign[s] plain error" on appeal.
 
 State v. Waring
 
 ,
 
 364 N.C. 443
 
 , 468, 508,
 
 701 S.E.2d 615
 
 , 632, 656 (2010),
 
 cert. denied
 
 ,
 
 *9
 

 565 U.S. 832
 
 ,
 
 132 S. Ct. 132
 
 ,
 
 181 L. Ed.2d. 53
 
 (2011). For error to constitute plain error, a defendant must
 

 demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice - that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty.
 

 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (internal citations, quotation marks, and brackets omitted).
 

 B. Motion to Suppress
 

 Defendant first challenges the trial court's finding that she was seen drinking 30 to 60 minutes before driving. Relatedly, Defendant also challenges the trial court's denial of her motion to suppress the evidence obtained through Officer Thompson's traffic stop of her vehicle. She argues that Officer Thompson did not have a reasonable, articulable suspicion to stop Defendant, and thus it was error to admit evidence resulting from the stop. Finally, Defendant argues that the trial court's
 
 *111
 
 denial of the motion to suppress constituted plain error as it had a probable impact on the jury's guilty verdict. We agree with Defendant in each instance.
 

 The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. The North Carolina Constitution affords similar protection. N.C. Const. art. I, § 20. "A traffic stop is a seizure 'even though the purpose of the stop is limited and the resulting detention quite brief.' "
 
 State v. Barnard
 
 ,
 
 362 N.C. 244
 
 , 246,
 
 658 S.E.2d 643
 
 , 645 (2008),
 
 cert. denied
 
 ,
 
 555 U.S. 914
 
 ,
 
 129 S. Ct. 264
 
 ,
 
 172 L. Ed.2d 198
 
 (2008) (quoting
 
 Delaware v. Prouse
 
 ,
 
 440 U.S. 648
 
 , 653,
 
 99 S. Ct. 1391
 
 , 1396,
 
 59 L. Ed.2d 660
 
 , 667 (1979) ). "Such stops have 'been historically viewed under the investigatory detention framework first articulated in
 
 Terry v. Ohio
 
 ,
 
 392 U.S. 1
 
 ,
 
 88 S. Ct. 1868
 
 ,
 
 20 L. Ed.2d 889
 
 (1968).' "
 

 Id.
 

 ,
 
 658 S.E.2d at 645
 
 (quoting
 
 United States v. Delfin-Colina
 
 ,
 
 464 F.3d 392
 
 , 396 (3rd Cir. 2006) ). "[A] traffic stop is constitutional if the officer has a 'reasonable, articulable suspicion that criminal activity is afoot.' "
 
 Id.
 
 at 246-47,
 
 658 S.E.2d at 645
 
 (quoting
 
 Illinois v.
 

 Wardlow
 
 ,
 
 528 U.S. 119
 
 , 123,
 
 120 S. Ct. 673
 
 , 675,
 
 145 L. Ed.2d 570
 
 , 576 (2000) ). This reasonable suspicion must derive from more than an "inchoate and unparticularized suspicion or 'hunch[.]' "
 
 Terry
 
 ,
 
 392 U.S. at 27
 
 ,
 
 88 S. Ct. at 1883
 
 ,
 
 20 L. Ed.2d at 909
 
 .
 

 In North Carolina, "reasonable suspicion is the necessary standard for traffic stops, regardless of whether the traffic violation was readily observed or merely suspected."
 
 State v. Styles
 
 ,
 
 362 N.C. 412
 
 , 415,
 
 665 S.E.2d 438
 
 , 440 (2008).
 

 Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence. Only some minimal level of objective justification is required. This Court has determined that a reasonable suspicion standard requires that the stop be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. Moreover, a court must consider the totality of the circumstances-the whole picture in determining whether a reasonable suspicion exists.
 

 Barnard
 
 , 362 N.C. at 247,
 
 658 S.E.2d at 645
 
 (citations, quotation marks, brackets, and ellipsis omitted).
 

 Though not always reducible to a mechanically applied formula, case law provides useful guidance in ascertaining what constitutes
 
 *112
 
 reasonable suspicion of criminal activity justifying a traffic stop. "To be sure, when a defendant does in fact commit a traffic violation, it is constitutional for the police to pull the defendant over."
 
 State v. Johnson
 
 ,
 
 370 N.C. 32
 
 , 38,
 
 803 S.E.2d 137
 
 , 141 (2017). "But while an actual violation is sufficient, it is not necessary."
 

 Id.
 

 at 38
 
 ,
 
 803 S.E.2d at 141
 
 . The following circumstances have supported finding a reasonable suspicion of criminal activity even absent showing a traffic violation:
 

 - Defendant constantly weaved within lane for three-quarters of a mile at 11:00 p.m.
 
 State v. Otto
 
 ,
 
 366 N.C. 134
 
 , 138,
 
 726 S.E.2d 824
 
 , 828 (2012).
 

 *10
 
 - Tipster anonymously complained about intoxicated person driving black, four-door Hyundai and defendant drove car matching that description 20 m.p.h. in 35 m.p.h. zone, stopped at intersection without stop sign or light for "longer than usual," continued to travel "well below" speed limit, stopped at train crossing for 15-20 seconds with no train coming, failed to pull over for approximately two minutes after officer turned on blue lights, and passed several safe places to pull over before defendant stopped his car in middle of the street.
 
 State v. Mangum
 
 , --- N.C. App. ----,
 
 795 S.E.2d 106
 
 , 109-110 (2016).
 

 - Defendant followed exact pattern for purchasing drugs (previously observed by police officer) by driving into area adjacent to building and leaving two minutes later.
 
 State v. Crandell
 
 , --- N.C. App. ----,
 
 786 S.E.2d 789
 
 , 796 (2016).
 

 However, when the basis for an officer's suspicion connects only tenuously with the criminal behavior suspected, if at all, courts have not found the requisite reasonable suspicion.
 
 See
 

 Brown v. Texas
 
 ,
 
 443 U.S. 47
 
 , 48-49,
 
 99 S. Ct. 2637
 
 , 2639,
 
 61 L. Ed.2d 357
 
 , 360 (1979) (stop invalidated when based on officer observing defendant and another man "walking in opposite direction away from one another in an alley" in a neighborhood with "a high incidence of drug traffic");
 
 State v.
 

 Brown
 
 ,
 
 217 N.C. App. 566
 
 , 572-73,
 
 720 S.E.2d 446
 
 , 451 (2011),
 
 review denied
 
 ,
 
 365 N.C. 541
 
 ,
 
 742 S.E.2d 187
 
 (2012) (stop invalidated when based on officer seeing car pull off to side of road approximately four hours after nearby unsolved robbery, hearing yelling and car doors slamming, and observing car rapidly accelerating but without violating traffic laws);
 
 State v. Murray
 
 ,
 
 192 N.C. App. 684
 
 ,
 
 666 S.E.2d 205
 
 (2008) (stop invalidated
 
 *113
 
 when based on officer observing motorist driving car consistent with traffic law and in a normal fashion at 3:41 a.m. in a high-crime area).
 

 Here, Defendant argues first that the competent evidence does not support the trial court's Findings of Fact 5 in its order denying her motion to suppress. More specifically, Defendant challenges the underlined portion of Finding of Fact 5:
 

 5. Sgt. Thompson was on routine patrol and saw the defendant drinking a tall can of beer on the porch of a house (where people would hang out)
 
 approximately 30 minutes to an hour before the time of the traffic stop
 
 [.]
 

 (Emphasis added.)
 

 Crediting Officer Thompson's testimony, as the trial court did, the record establishes that it was longer than "approximately 30 minutes to an hour" between the time Officer Thompson observed Defendant drinking a can of beer on the porch and when he pulled her car over later that evening. While he offered the 30 to 60 minute window on direct examination at the suppression hearing, he clarified on cross-examination that the timeframe was in fact approximately two hours, as reflected by the citation he issued to Defendant on the evening in question. On redirect, moreover, Officer Thompson confirmed that it was at least an hour and a half between when he saw Defendant drinking and "buying more beer" at the gas station. The trial court's order denying the motion to suppress also finds that Officer Thompson "initiated the traffic stop at approximately 11:00 pm[,]" two hours after initially observing Defendant on the porch. This finding is supported by competent evidence and conflicts with the fifth finding of fact. The trial court's fifth finding of fact was for these reasons not supported by competent evidence, and is not binding on appeal.
 
 See
 

 State v. Parker
 
 ,
 
 137 N.C. App. 590
 
 , 598,
 
 530 S.E.2d 297
 
 , 302 (2000).
 

 We next consider whether, absent the evidentiary support of the fifth finding of fact, Officer Thompson had a reasonable, articulable suspicion to make the stop. Viewing the facts in the light most favorable to the State, the trial court concluded as a matter of law:
 

 Looking at the totality of the circumstances there was a reasonable, articulable suspicion that justified the traffic stop and, viewing all the facts and circumstances through a reasonably cautious officer, being guided by his experience and training, and prior knowledge of the Defendant.
 

 *11
 

 *114
 
 The bulk of the evidence before the trial court at the suppression hearing belies this conclusion. Officer Thompson did not see Defendant stumble or otherwise appear impaired upon leaving the BP with a beer in a brown bag and entering her car. There was no evidence that Defendant drank from the beer she purchased.
 
 [1]
 
 Defendant did not violate any traffic laws prior to the stop. What is more, according to Officer Thompson's own testimony, Defendant's "[d]riving appeared normal" that evening. Defendant was not driving too fast, nor was she driving too slowly. She did not weave or swerve. She had no problem pulling over to the side of the road during the course of the traffic stop.
 

 In contrast, the evidentiary basis for the stop was quite limited. Officer Thompson was clear on this point: "I stopped her because earlier that night I observed her drinking a beer. She went back in the store, bought more beer, and then decided to get under the wheel and drive."
 

 The State also makes reference to Defendant's past criminal record for driving while license revoked and for an open container violation. Prior charges alone, however, do not provide the requisite reasonable suspicion and these particular priors are too attenuated from the facts of the current controversy to aid the State's argument.
 
 See
 

 State v. Branch
 
 ,
 
 162 N.C. App. 707
 
 , 713,
 
 591 S.E.2d 923
 
 , 926 (2004),
 
 rev'd on other grounds sub. nom.
 

 North Carolina v. Branch
 
 ,
 
 546 U.S. 931
 
 ,
 
 126 S.Ct. 411
 
 ,
 
 163 L. Ed.2d 314
 
 (2005) (prior knowledge that defendant's license had been revoked sufficient to justify license check but insufficient to justify dog sniff and subsequent search).
 

 Considering the totality of the circumstances, there was no "pattern[ ] of operation of [a] certain kind[ ] of lawbreaker[,]" and "[f]rom these data" Officer Thompson's inferences and deductions went too far.
 
 See
 

 United States v. Cortez
 
 ,
 
 449 U.S. 411
 
 , 418,
 
 101 S. Ct. 690
 
 , 695,
 
 66 L. Ed.2d 621
 
 , 629 (1981). Accordingly, we hold that the trial court erred in concluding that Officer Thompson had reasonable suspicion to stop Defendant's vehicle and thus erred in denying Defendant's motion to suppress.
 

 Having determined that the motion to suppress was erroneously denied, we advance to the second step in our plain error review-whether this error had a probable impact on the jury's determination that Defendant was guilty.
 
 See
 

 Lawrence
 
 , 365 N.C. at 518,
 
 723 S.E.2d at 334
 
 . Here, the answer is straightforward. If Defendant's motion to suppress
 
 *115
 
 had been granted, there would have been no evidence showing criminal conduct on her part as Officer Thompson was the sole witness at trial, and all incriminating evidence was gathered by him as a result of the stop. Thus, the trial court's erroneous denial of Defendant's motion to suppress Officer Thompson's testimony under N.C. Gen. Stat. § 15A-977 had a probable impact on the jury's verdict.
 
 See
 
 id.
 

 Accordingly, the trial court's denial of Defendant's motion to suppress constituted plain error and reversal of the judgment entered upon the jury's verdict is required.
 

 III. Conclusion
 

 For the foregoing reasons, we reverse the trial court's order denying Defendant's motion to suppress and vacate the judgment entered upon a jury verdict based exclusively on evidence obtained through an unconstitutional stop.
 

 ORDER REVERSED; JUDGMENT VACATED.
 

 Judges INMAN and ARROWOOD concur.
 

 [1]
 

 In fact, at trial Officer Thompson confirmed that the beer was unopened at the time of the stop.