# TUTEN v. UNITED STATES

No. 81–6756.   Argued March 1, 1983—Decided March 30, 1983

MARSHALL, J., delivered the opinion for a unanimous Court.

*Linda Gillespie Stuntz* argued the cause for petitioner. With her on the briefs was *Erwin N. Griswold.*

*Barbara E. Etkind* argued the cause for the United States. With her on the brief were *Solicitor General Lee, Assistant Attorney General Jensen, Deputy Solicitor General Frey,* and *Kathleen A. Felton.*

JUSTICE MARSHALL delivered the opinion of the Court.

This case presents the question whether a conviction upon which a youth offender was sentenced to probation under the Federal Youth Corrections Act of 1950, 18 U. S. C. § 5005 *et seq.,* was automatically set aside after he served his full term of probation.

I

In 1971 petitioner Melvin Tuten, who was 19 years old, pleaded guilty to the charge of carrying a pistol without a license in violation of D. C. Code § 22–3204 (1981).[1] He was placed on probation for two years under the Federal Youth Corrections Act of 1950 (YCA), 18 U. S. C. § 5005 *et seq.* At the end of the 2-year probationary period, petitioner was unconditionally discharged from the YCA program.

In 1980 petitioner was tried and convicted of carrying a pistol without a license under the same provision of the D. C. Code. The prosecutor urged that petitioner's previous conviction made him subject to the enhanced penalty provided

---

[1] Section 22–3204 provides:

"No person shall within the District of Columbia carry either openly or concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided, or any deadly or dangerous weapon capable of being so concealed. Whoever violates this section shall be punished as provided in § 22–3215 [by a fine of not more than $1,000, or imprisonment for not more than one year, or both], unless the violation occurs after he has been convicted in the District of Columbia of a violation of this section or of a felony, either in the District of Columbia or in another jurisdiction, in which case he shall be sentenced to imprisonment for not more than 10 years."

by D. C. Code § 22–3204 (1981) for one who previously "has been convicted in the District of Columbia of a violation of this section." The trial judge agreed and, based on the earlier conviction, sentenced petitioner as a felon rather than a misdemeanant. The judge imposed a sentence of two to six years' imprisonment.

On appeal to the District of Columbia Court of Appeals, petitioner contended that the earlier conviction could not properly provide the basis for his being sentenced as a recidivist because that conviction had been expunged under the YCA, § 5021(b), following his successful completion of the 2-year probationary term. The court rejected this assertion and affirmed the sentence. 440 A. 2d 1008 (1982). It relied primarily upon the "ordinary meaning" of the language of § 5021. 440 A. 2d, at 1013. Section 5021 provides:

> "(a) Upon the unconditional discharge by the Commission of a committed youth offender before the expiration of the maximum sentence imposed upon him, the conviction shall be automatically set aside and the Commission shall issue to the youth offender a certificate to that effect.

> "(b) Where a youth offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally discharge such youth offender from probation prior to the expiration of the maximum period of probation theretofore fixed by the court, which discharge shall automatically set aside the conviction, and the court shall issue to the youth offender a certificate to that effect."

The court concluded that the automatic set-aside provision of subsection (b) applies only to a youth offender who receives an unconditional discharge *before* the expiration of his probationary period. The court also stated that "the legislative history contains no persuasive reasons" to depart from the ordinary meaning of the statutory language, and noted that

"the case law and public policy support the plain meaning of the statute." 440 A. 2d, at 1013.[2] We granted certiorari, 459 U. S. 905 (1982), and we now affirm.

## II

This Court has in previous decisions described and analyzed the YCA in considerable detail in the course of deciding particular issues arising under the Act. See *Ralston* v. *Robinson*, 454 U. S. 201 (1981); *Durst* v. *United States*, 434 U. S. 542 (1978); *Dorszynski* v. *United States*, 418 U. S. 424 (1974). The Act generally applies to persons under 22 years of age at the time of their conviction[3] who are sentenced in federal courts or in courts of the District of Columbia.[4] "[T]he principal purpose of the YCA is to rehabilitate persons who, because of their youth, are unusually vulnerable to the danger of recidivism." *Ralston* v. *Robinson, supra,* at 206. To achieve this purpose, the Act gives courts a number of alternatives in sentencing youth offenders. First, a court may commit a youth offender to the custody of the Attorney General for institutional treatment and supervision under the Act. 18 U. S. C. §§ 5010(b) and (c). The Act affords the Attorney General a broad range of discretion in providing institutional treatment, which includes educational and vocational training as well as psychiatric counseling. §§ 5006(g),

---

[2] Two courts have expressed a contrary view. See *United States* v. *Arrington*, 618 F. 2d 1119, 1124 (CA5 1980), cert. denied, 449 U. S. 1086 (1981); *United States* v. *Sinkfield*, 484 F. Supp. 595, 598 (ND Ga. 1980). Cf. *United States* v. *Villar*, 416 F. Supp. 887, 889 (SDNY 1976).

[3] 18 U. S. C. § 5006(e). As we noted in *Dorszynski* v. *United States*, 418 U. S. 424, 433, n. 9 (1974), the Act also applies in some circumstances to certain convicted persons between the ages of 22 and 26. 18 U. S. C. § 4216. It ordinarily does not apply to convicted persons under the age of 18, who are eligible for sentencing under the Federal Juvenile Delinquency Act, 18 U. S. C. § 5031 *et seq.* (1976 ed. and Supp. V). It also does not apply to certain multiple offenders in the District of Columbia. D. C. Code § 22–3202(d)(1) (1981).

[4] 18 U. S. C. § 5024.

5011, 5013. See *Dorszynski, supra,* at 434.[5] Second, if the court finds, as it did in this case, that a youth offender does not need to be committed to custody, it may place him on probation under the supervision of a probation officer or supervisory agent. § 5010(a). Finally, if the court finds that the defendant will not benefit from rehabilitative treatment, it may sentence him under any of the penalty provisions applicable to adult offenders. § 5010(d).

As we noted in *Durst* v. *United States, supra,* at 548, "[a] particularly valuable benefit for the offender sentenced under the YCA is the prospect of obtaining a certificate setting aside his conviction" under § 5021 of the Act. Congress' purpose in adopting § 5021 was to promote the rehabilitation of youth offenders by providing a substantial incentive for positive behavior while serving a sentence under the YCA.[6] Congress recognized that a criminal conviction often carries with it numerous civil and social disabilities. For example, a conviction may result in the loss of the rights to vote, to hold a public office, to serve on a jury, and to practice various occupations and professions.[7] As in this case, a conviction may also make an offender subject to increased penalties for

---

[5] See also H. R. Rep. No. 2979, 81st Cong., 2d Sess., 4 (1950); *United States* v. *Ward,* 337 F. Supp. 185, 193 (DC 1971). Cf. Narcotic Addict Rehabilitation Act of 1966, 18 U. S. C. § 4251(c).

[6] See, *e. g.,* Hearings on S. 1114 and S. 2609 before a Subcommittee of the Senate Committee on the Judiciary, 81st Cong., 1st Sess., 14 (1949) (testimony of Judge Laws). Congress reaffirmed this goal when it extended § 5021 to youth offenders initially sentenced to probation. See *infra,* at 665–666. Senator Dodd, who sponsored the 1961 amendment, explained that the provision "provides an additional incentive for maintaining good behavior by holding out to the youth an opportunity to clear his record." 107 Cong. Rec. 8709 (1961).

[7] See generally Special Project—The Collateral Consequences of a Criminal Conviction, 23 Vand. L. Rev. 929 (1970); S. Rubin, H. Weihofen, G. Edwards, & S. Rosenzweig, The Law of Criminal Correction 611–632 (1963); P. Tappan, Loss and Restoration of Civil Rights of Offenders, in National Probation and Parole Association, Crime Prevention Through Treatment 86–104 (1952).

subsequent convictions. Like various state expungement statutes,[8] § 5021 enables an eligible youth offender to reenter society and conduct his life free from the disabilities that accompany a criminal conviction. *Dorszynski, supra,* at 429, n. 6.[9]

Until 1961, the YCA's set-aside provision was applicable only to a youth who was committed to the custody of the Attorney General under § 5010(b) or § 5010(c) and was unconditionally discharged prior to expiration of the maximum sentence imposed.[10] It was not applicable to an offender who, like petitioner, was sentenced initially to probation rather than to confinement. The YCA was amended in 1961 to add § 5021(b), Pub. L. 87–336, 75 Stat. 750, in order to correct this inconsistency in the Act. See H. R. Rep. No. 433, 87th Cong., 1st Sess., 1 (1961); S. Rep. No. 1048, 87th Cong., 1st Sess., 1 (1961). Under § 5021(b), youth offenders sentenced initially to probation under § 5010(a) are afforded an opportunity to have their convictions set aside similar to that which

---

[8] See, *e. g.,* Cal. Penal Code Ann. § 1203.45 (West 1982); Kan. Stat. Ann. § 21–4619 (1981); Minn. Stat. § 242.31 (1982).

[9] See, *e. g.,* Hearings, *supra* n. 6, at 14 (testimony of Judge Laws) ("Committed youth offenders who earn their final discharge before the end of their maximum term have their records cleared and all their civil rights restored"); *id.,* at 117 (letter from Judge Wyche) ("I believe that a boy who makes one mistake should be permanently forgiven that mistake if his subsequent conduct indicates that he has changed his behavior. One blot on his record may cause him great harm when he applies for a position in later years"). See also United States Board of Parole Ann. Rep. 30 (1962) ("It was the intention of the authors of the statute that such setting aside of conviction action would, in fact, expunge the record of that conviction"). Of course, federal legislation may impose disabilities even on persons whose convictions have been expunged. See *Dickerson* v. *New Banner Institute, Inc., ante,* p. 103.

[10] Generally, a youth offender would be considered for an early discharge under § 5017 if there was a reasonable probability that the youth offender would remain free from further law violations. See United States Board of Parole, *supra,* at 30.

had previously been afforded only to youth offenders sentenced under §§ 5010(b) and (c).

We are now asked to decide when § 5021 requires the setting aside of the conviction of a youth offender who has been placed on probation. Petitioner maintains that after a youth offender successfully completes the term of probation to which he was initially sentenced, his conviction must be automatically set aside under § 5021(b). As the court below noted, however, this interpretation is contrary to the language of the statute itself, which provides that a "discharge shall automatically set aside the conviction" if the court "unconditionally discharge[s] [the] youth offender from probation *prior to* the expiration of the maximum period of probation theretofore fixed by the court" (emphasis added). The clear import of § 5021(b) was described by this Court in *Durst.* "[Section 5021(b)] extend[s] the benefit of a certificate [setting aside the conviction] to youths sentenced to probation under § 5010(a) when the court unconditionally discharges the youth *prior to expiration of the sentence of probation imposed.*" 434 U. S., at 548 (emphasis added). See also *Dorszynski,* 418 U. S., at 435. Statements in the legislative history of the 1961 amendment echo the language of § 5021(b) limiting the set-aside to youth offenders discharged before their original probationary terms expire.[11]

---

[11] See, *e. g.,* H. R. Rep. No. 433, 87th Cong., 1st Sess., 2–3 (1961); S. Rep. No. 1048, 87th Cong., 1st Sess., 2–3 (1961).

The only suggestion to the contrary contained in the legislative history is a statement of Senator Dodd, who introduced the bill to amend 18 U. S. C. § 5021 which was ultimately enacted as Pub. L. 87–336, 75 Stat. 750. See *supra,* at 665 and this page. Describing the law as it existed before the addition of subsection (b), he stated:

"Under section 5021 of title 18, a committed youth who is unconditionally discharged before the expiration of the maximum sentence imposed upon him automatically has his conviction set aside. No such provision exists for the youth who is released from probation. *His conviction remains on*

Under the interpretation of § 5021(b) plainly suggested by the language of the statute, the conviction of a youth offender who has been placed on probation under § 5010(a) is not set aside where, as here, the court has *not* exercised its discretion to discharge him unconditionally "prior to the expiration of the maximum period of probation theretofore fixed by the court," which in this case was two years. This limitation is fully consistent with the rehabilitative purposes of the YCA as well as with Congress' intent to employ the set-aside as an incentive for positive behavior by youths sentenced under the Act. The incentive might be significantly weaker if convictions were set aside regardless of whether the youth offender, by his conduct during the probationary period, had convinced the sentencing court to discharge him before the expiration of his probationary term. Although it would also have been reasonable for Congress to make the set-aside available to any youth offender who completes probation without incident, this result is certainly not compelled by the purposes of the Act. Moreover, the remedial purposes of the Act are not frustrated by the possibility that a court may

---

*the record until the original sentence expires.* The law, as it stands now, discriminates against the youth on probation who is generally charged with a lesser offense." 107 Cong. Rec. 8709 (1961) (emphasis added).

This remark implies that prior to the adoption of § 5021(b), the conviction of a youth offender who was sentenced to probation would automatically be set aside after his original term of probation expired. There is nothing in the Act that so provided, however. Nor is there any support in the prior legislative history of the Act or in the past practices of courts or agencies under the Act to justify this understanding. Indeed, the suggestion that convictions under the YCA are automatically set aside after the original sentence expires is flatly contradicted by Senator Dodd's subsequent observation that § 5021 only "hold[s] out to the youth *an opportunity* to clear his record," *ibid.* (emphasis added), as well as by statements contained in the Report submitted by Senator Dodd a few months later. See S. Rep. No. 1048, *supra.* We are therefore unwilling to assume that Congress would have relied on the isolated remark spoken on the floor of the Senate when it amended § 5021.

inadvertently fail to grant an early unconditional discharge.[12] A youth offender who believes that the sentencing court's failure to grant an early unconditional discharge from probation was an oversight may, following the completion of his probationary period, move that court to exercise its discretion to grant him an early unconditional discharge *nunc pro tunc* and to set aside his conviction. See *United States* v. *Fryer*, 545 F. 2d 11, 13, n. 3 (CA6 1976).[13]

In short, the language of § 5021(b), the legislative history, and the rehabilitative purposes of the YCA all point to a single conclusion: that petitioner's previous conviction was not set aside under § 5021(b) because he was unconditionally discharged from probation upon the completion, not prior to the completion, of the 2-year term of probation to which he was initially sentenced under § 5010(a). The trial court was therefore free in this case to take petitioner's previous conviction into account in imposing sentence under the recidivist provision of the District of Columbia's penal statute. Accordingly, the judgment of the District of Columbia Court of Appeals is

*Affirmed.*

---

[12] Prior to the expiration of a youth offender's term of probation, a probation officer is required to file a report evaluating the probationer's conduct and progress and reminding the court that an early unconditional discharge will automatically set aside the conviction. See, *e. g.*, Administrative Office of the United States Courts, Guide to Judiciary Policies and Procedures: Probation Manual, Vol. X–A, § 5011 (1980). Such procedures ensure that the court is made aware of its duty to decide whether granting an early unconditional discharge is warranted in light of the remedial ends of the YCA.

[13] A person sentenced under a recidivist statute on the basis of a prior conviction that is subsequently set aside under such a procedure can move for a reduction of sentence from the second sentencing court. See, *e. g.*, Fed. Rule Crim. Proc. 35; D. C. Super. Ct. Crim. Rule 35(a).