PUBLISH

# UNITED STATES COURT OF APPEALS
Filed 8/27/96                    TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ARTEMIO GARCIA MORENO,

    Defendant-Appellant.

No. 96-3030

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
### (D.C. No. 95-40027-01-DES)

---

**On the briefs:**

J.C. Castillo, Houston, Texas, for Defendant-Appellant.

Jackie N. Williams, United States Attorney, and James E. Flory, Assistant United States Attorney, Topeka, Kansas, for Plaintiff-Appellee.

---

Before **SEYMOUR**, Chief Judge, **KELLY** and **LUCERO**, Circuit Judges.

---

**SEYMOUR,** Chief Judge.

Defendant Artemio Garcia Moreno appeals his conviction and sentence for possession of and conspiracy to possess marijuana with intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1), 846. For the reasons set out below, we affirm.[1]

I

On September 28, 1994, Kansas State Trooper B.K. Smith stopped a truck driven by Florencio O. Vargas and Jaime R. Mendoza for a traffic violation. A search of the truck revealed approximately 512 pounds of raw marijuana in trash compactor bags. Mr. Vargas and Mr. Mendoza were arrested and indicted on federal drug charges.

Special Agent Catheleen Elser of the Kansas Bureau of Investigation subsequently determined that the truck was registered to J.R. Motors in Houston, Texas. She telephoned J.R. Motors and spoke to an individual who identified himself as Artemio Moreno. Mr. Moreno confirmed his ownership of the truck and said he had loaned it to "Jose" and expected it to be returned in a few days. Mr. Moreno initially told Agent Elser that he did not know Jose's last name or

_____

[1] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

where he lived.

Mr. Vargas and Mr. Mendoza pled guilty to possession charges pursuant to a plea bargain in which they agreed to identify others involved in the crime. The agreement also stated that the United States would file a motion for reduction of sentence under Fed. R. Crim. P. 35 should either Mr. Vargas or Mr. Mendoza provide "substantial assistance" in the prosecution of another person. Mr. Vargas and Mr. Mendoza both identified Mr. Moreno as the person who hired them to harvest the marijuana in Iowa and transport it to Texas. A grand jury indicted Mr. Moreno for possession of and conspiracy to possess marijuana with intent to distribute it.

At trial, Mr. Vargas testified that he did some work for Mr. Moreno in Houston, and that Mr. Moreno had a motor home in which he let Mr. Vargas and Mr. Mendoza live for a short time. In September 1994, Mr. Moreno asked Mr. Vargas and Mr. Mendoza to drive to Iowa in the truck, and Mr. Moreno followed them a few days later in the motor home. Mr. Vargas and Mr. Mendoza harvested marijuana plants from a field to which they were directed by Mr. Moreno. They put the plants in plastic bags and compacted them in the motor home trash compactor. Mr. Moreno was to pay Mr. Vargas five thousand dollars and Mr. Mendoza three thousand dollars for their work.

Mr. Vargas and Mr. Mendoza testified that Mr. Moreno registered them in

two motels in Iowa.  The manager for the I-80 Inn in Underwood, Iowa, testified that an Hispanic man by the name of "Art Marino" filled out a registration card at the motel.  The registration card at the other motel listed the address of "Art Marino" as 11518 Beville in Houston, Texas.  Mr. Moreno's address in Houston was 11518 Inga Drive.

Defense counsel cross-examined Mr. Vargas and Mr. Mendoza at length about the plea agreement they had reached with the government, implying that they had fabricated the story about Mr. Moreno's involvement in order to secure a sentence reduction.  In response and over defendant's objection, the goverment presented Mr. Vargas' attorney, who testified Mr. Vargas had told him of Mr. Moreno's involvement prior to the plea bargain.

Mr. Moreno was found guilty on both counts. The district court sentenced him to concurrent 97 month terms.  On appeal, Mr. Moreno challenges his conviction and sentencing.


II

Mr. Moreno contends the trial court erred in admitting the motel registration receipts into evidence, asserting that they constituted hearsay.[2]

---

[2]  As the government points out, Mr. Moreno only objected at trial to the I-80 Inn registration.

-4-

Both parties believe that *United States v. McIntyre*, 997 F.2d 687 (10th Cir. 1993), *cert. denied,* 114 S. Ct. 736 (1994), applies and devote themselves to explaining why it supports their position. *McIntyre* is inapposite, however, for there "[t]he government offered these documents for the truth of the matter asserted, namely that Vickie Hogg checked into the two motels on the dates recorded and paid for the rooms." *Id.* at 699. Here, as Mr. Moreno points out, the motel registration forms recorded a demonstrably different name from Mr. Moreno's and bore a different street address. The government did not seek admission of the forms to prove that the person named in the forms, Art Morino, actually checked into the motel. Rather, because the name and address in the forms were similar to Mr. Moreno's, the government was attempting to create the inference that Mr.Moreno had checked in under a false name. This case is thus governed by our decision in *United States v. Cestnik*, 36 F.3d 904, 908-09 & n.3 (10th Cir. 1994), *cert. denied*, 115 S. Ct. 1156 (1995). We there held that money transfer documents containing alibis used by the defendant were not hearsay because they were not introduced to prove the identity of the sender but as circumstantial evidence linking the money transfers to the false names, which the government then linked to the defendants through other evidence. Because "Art Marino" was not Mr. Moreno's name, the motel registration cards were not introduced to establish Mr. Moreno's identity and were thus not hearsay. The

testimony of Mr. Vargas and Mr. Mendoza supported the government's contention that Mr. Moreno registered at the motels. The district court did not abuse its discretion in admitting the motel registration cards.

III

Mr. Moreno asserts the trial court erred in allowing counsel for Mr. Vargas to testify to statements Mr. Vargas made to him concerning Mr. Moreno's involvement in the crime. The court admitted the testimony as a prior consistent statement of Mr. Vargas under Fed. R. Evid. 801(d)(1)(B) because the statement was made prior to Mr. Vargas' plea bargain.

Mr. Moreno relies upon *Tome v. United States*, 115 S. Ct. 696 (1995), which held that Rule 801(d)(1)(B) "permits the introduction of a declarant's consistent out-of-court statements to rebut a charge of recent fabrication or improper influence or motive only when those statements were made before the charged recent fabrication or improper influence or motive." *Id.* at 705. Although the government suggests that Mr. Vargas had no incentive to fabricate a story prior to his plea-bargain agreement, Mr. Moreno claims that Mr. Vargas had a motive to lie as soon as he was arrested.

Mr. Moreno's position is supported by the Second Circuit's decision in *United States v. Forrester*, 60 F.3d 52 (2nd Cir. 1995). *Forrester* held that a

testifying co-defendant's "motive to fabricate arose as soon as she was arrested and, therefore, her statement was inadmissible hearsay." *Id.* at 64. We are persuaded similarly that Mr. Vargas had an incentive to concoct a story implicating Mr. Moreno as soon as he was arrested by Trooper Smith. Under *Tome* therefore, the district court erred in admitting the testimony of Mr. Vargas' counsel.

Although "the court erred by admitting the evidence, this error [does] not require the reversal of [Mr. Moreno's] conviction. 'Error which does not affect substantial rights does not require reversal.'" *United States v. Olivo*, 80 F.3d 1466, 1469 (10th Cir. 1996) (quoting *United States v. Robinson*, 978 F.2d 1554, 1560 (10th Cir. 1992), *cert. denied*, 507 U.S. 1034 (1993)). Our review of the record convinces us the district court's error did not have "a 'substantial influence' on the outcome or leave[] one in 'grave doubt' as to whether it had such effect." *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990) (en banc) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)).

At trial, Mr. Moreno's defense was that Mr. Vargas and Mr. Mendoza implicated him to escape more severe punishment. Mr. Moreno repeatedly suggested that the two lied to Trooper Smith when they told him Mr. Moreno was involved, and that they misled their own attorneys during the plea-bargain negotiations. In these respects, some of the concerns of the *Tome* Court are less

pressing here. *See Tome*, 115 S. Ct. at 705 ("In response to a rather weak charge that A.T.'s testimony was a fabrication created so the child could remain with her mother, the Government was permitted to present a parade of sympathetic and credible witnesses who did no more than recount A.T.'s detailed out-of-court statements to them."). Here, Mr. Vargas and Mr. Mendoza testified at length and in detail about Mr. Moreno's involvement in the crimes, and their accounts were supported by considerable evidence. The similarity of the name and address on the motel registration to Mr. Moreno's name and address lends credence to their stories, as does the motel clerk's testimony that she saw three people enter the room. The jury also had before it Mr. Moreno's initial story to the investigator that he had loaned the truck to a man whose last name and address he did not know, and his assertion thereafter that he had loaned the truck to Mr. Vargas for a three-week test drive without a down payment or other security. Moreover, Mr. Vargas' counsel testified without elaboration that Mr. Vargas implicated Mr. Moreno before the plea bargain. Under these circumstances, we hold that the district court's error was harmless.

IV

Mr. Moreno contends he received ineffective assistance of counsel at his sentencing because his counsel stipulated to the total weight of the marijuana.

We have held that "[i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). Nevertheless, we will dispose of Mr. Moreno's claims in this appeal because his argument that he was prejudiced[3] by his trial counsel's actions fails as a matter of law. *Id.*

Mr. Moreno claims that his counsel should not have stipulated to the weight of the drugs seized, and suggests the actual weight of the marijuana, less stalks and moisture, was less than the stipulated weight. However, the sentencing guidelines direct that "the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c) (n.*). The Seventh Circuit has noted that "stalks of the marijuana plant, although excluded from the guideline definition of marijuana, can still constitute part of a 'mixture or substance' containing a detectable amount of marijuana for the calculation of weight of the controlled substance seized." *United States v. Garcia*, 925 F.2d

---

[3] To establish ineffective assistance of counsel, a defendant must show both that his counsel's performance was constitutionally deficient and that he was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Miles v. Dorsey*, 61 F.3d 1459, 1475 (10th Cir. 1995), *cert. denied*, 116 S. Ct. 743 (1996). In view of our discussion of prejudice, we need not address the first requirement.

170, 173 (7th Cir. 1991) (citing *United States v. Berry*, 876 F.2d 55, 56 (8th Cir. 1989)). Although Mr. Moreno contends that the stalks are not usable, it does not matter whether the substance is usable or marketable. See *United States v. Richards*, 87 F.3d 1152, 1157-58 (10th Cir. 1996) (en banc). We hold that Mr. Moreno's counsel did not prejudice him by stipulating to the weight of the drugs in the form they were seized.

V

Finally, Mr. Moreno asserts the district court erred by considering his previous conviction in determining his sentence. At the time of his prior conviction, Mr. Moreno was twenty-two years old and became eligible for a suspended sentence under the Federal Youth Corrections Act. Relying on *Tuten v. United States*, 450 U.S. 660 (1983), he argues that because his first sentence was set aside it should not have been counted in determining his criminal history for application of the sentencing guidelines. We considered and rejected this argument in *United States v. Wacker*, 72 F.3d 1453, 1478-80 (10th Cir. 1995), *pet. for cert. filed* June 10, 1996 (No. 95-9284). Under *Wacker*, Mr. Moreno's earlier conviction was properly considered by the district court in assessing his criminal history.

**AFFIRMED.**