A.R., Appellant,

v.

F.C., Appellee.

No. 11–FM–766.

District of Columbia Court of Appeals.

Argued Nov. 30, 2011.

Decided Dec. 22, 2011.

---

Stacy L. Anderson, Assistant Attorney General, with whom Irvin B. Nathan, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellant.*

F.C., pro se.

Before FISHER and BLACKBURNE-RIGSBY, Associate Judges, and NEWMAN, Senior Judge.

FISHER, Associate Judge:

The Superior Court dismissed A.R.'s petition for a civil protection order because she was not in an "interpersonal, intimate partner, or intrafamily" relationship with the respondent. *See* D.C.Code § 16–1001(12) (2011 Supp.) (definition of "petitioner"). Because D.C.Code §§ 16–1001 and 16–1003 in combination make civil protection orders available to persons who allege stalking, sexual assault, or sexual abuse but have no prior relationship with the alleged offender, we reverse and remand for further proceedings.

## I.

On February 25, 2011, A.R. filed a petition for a Civil Protection Order ("CPO") in the Domestic Violence Unit of the Superior Court and requested that a Temporary Protection Order ("TPO") be issued against F.C. At an *ex parte* TPO hearing held the same day, A.R. alleged that F.C. had sexually assaulted her. A.R. testified that she and the respondent had not been "boyfriend and girlfriend," nor were they "living together" or in an "intimate relationship." Rather, respondent was an acquaintance, "one of the best friends of

---

* "The Attorney General may provide individual legal representation to a petitioner ... who files a petition in accordance with [D.C.Code § 16–1003(a) (2011 Supp.)]." D.C.Code § 16–1003(b) (2011 Supp.).

[her] ex-boyfriend." After determining that the parties were not in an "interpersonal, intimate partner, or intrafamily" relationship, the trial judge concluded that there was no "relationship here that would make this an appropriate matter for Domestic Violence Court." For this reason, and without determining whether A.R.'s allegations against F.C. were true, the court dismissed the petition on legal grounds.[1] We likewise decide only the legal question before us, having no means or authority to evaluate the truth of petitioner's claims.

## II.

 When interpreting a statute, the judicial task is to discern, and give effect to, the legislature's intent. *Grayson v. AT & T Corp.*, 15 A.3d 219, 237 (D.C.2011) (en banc). "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *Tippett v. Daly*, 10 A.3d 1123, 1126 (D.C.2010) (en banc) (quoting *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc)). "[I]ndividual words of a statute are to be read in the light of the statute taken as a whole, and where possible, courts should avoid constructions at variance with the policy of the legislation as a whole." *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 171 (D.C. 2008) (quotation marks and citations omitted).

## III.

 Section 16–1003 (a) of the D.C.Code permits a "petitioner" to "file a petition for civil protection in the Domestic Violence Unit against a respondent who has allegedly committed or threatened to commit one or more criminal offenses against the petitioner...."[2] The broad sweep of this language is limited significantly by a companion provision which defines a "petitioner" as "any person who alleges, or for whom is alleged, that he or she is the victim of interpersonal, intimate partner, or intrafamily violence, stalking, sexual assault, or sexual abuse." D.C.Code § 16–1001(12) (2011 Supp.).

Focusing on this definition, the trial court held that § 16–1001(12) grants access to civil protection orders only to persons alleging an "interpersonal, intimate partner, or intrafamily" relationship with the respondent. In other words, the court concluded that these adjectives limit the reach of each of the following four terms— "violence," "stalking," "sexual assault," and "sexual abuse." Under this reading, a victim could not qualify for a civil protection order based on an allegation of stalking, sexual assault, or sexual abuse by a stranger or a mere acquaintance. Petitioner argues to the contrary that the statute permits victims of "stalking, sexual assault, or sexual abuse" to apply for a CPO regardless of their relationship to the respondent. We agree with petitioner.

D.C.Code §§ 16–1001(6), (7), and (9) define "interpersonal violence," "intimate partner violence," and "intrafamily violence."[3] These terms are also easily recognizable within the definition of "petition-

---

1. The court subsequently denied the petitioner's motion to reconsider.

2. Civil protection may take the form of an *ex parte* temporary protection order, *see* D.C.Code § 16–1004(b) (2011 Supp.), or a protection order lasting up to one year, *see* D.C.Code § 16–1005(c) (2011 Supp.), or both. A judicial officer may, among other things, order the respondent to stay away from the petitioner, to refrain from committing further offenses, to participate in counseling programs, or to leave a mutual residence. D.C.Code § 16–1005(c) (2011 Supp.).

3.

er." D.C.Code § 16–1001(12) (2011 Supp.) (defining "petitioner" as "any person who alleges ... that he or she is the victim of *interpersonal, intimate partner, or intrafamily violence,* stalking, sexual assault, or sexual abuse.") (emphasis added). The Council used this same shorthand phrasing elsewhere in the same definitional section. *See* D.C.Code § 16–1001(8) (2011 Supp.) (defining "intrafamily offense" as "interpersonal, intimate partner, or intrafamily violence," *not* as "interpersonal violence, intimate partner violence, or intrafamily violence.").

While the Council could have, and perhaps should have, inserted the noun "violence" after each adjective ("interpersonal, intimate partner, and intrafamily"), the statute's meaning is plain without this repetition. Had the Council elongated its description, the term "petitioner" would be defined as "any person who alleges, or for whom is alleged, that he or she is the victim of interpersonal violence, intimate partner violence, or intrafamily violence, stalking, sexual assault, or sexual abuse." In our view, this approach would not change the definition of "petitioner," but it would make it more clear that the terms "interpersonal," "intimate partner," and

"intrafamily" do not modify "stalking," "sexual assault," or "sexual abuse."

The trial court would apply the qualifiers "interpersonal, intimate partner, or intrafamily" not only to "violence," but also to "stalking, sexual assault, or sexual abuse." But doing so would create nine new, undefined categories of CPO-eligible petitioners, and the limits of these categories would be highly uncertain. For instance, although the Council was careful to define "interpersonal violence," "intimate partner violence," and "intrafamily violence" in this subsection, nowhere in the D.C.Code has the Council provided a definition for the otherwise inscrutable terms "interpersonal sexual abuse" and "intrafamily stalking" created by the trial judge's reading. On the other hand, the unadorned terms "stalking," "sexual assault," and "sexual abuse" have clear meanings in the criminal law. *See* D.C.Code §§ 22–3001 to 22–3005 (sexual abuse); 22–3131 to 22–3133 (2011 Supp.) (stalking); *Davis v. United States,* 873 A.2d 1101, 1104 (D.C.2005) (discussing offenses "which we refer to generally as sexual assaults"); *Mungo v. United States,* 772 A.2d 240, 246 (D.C.2001) ("non-violent sexual touching assault").

(6) "Interpersonal violence" means an act punishable as a criminal offense that is committed or threatened to be committed by an offender upon a person:
 (A) With whom the offender shares or has shared a mutual residence; or
 (B) Who is or was married to, in a domestic partnership with, divorced or separated from, or in a romantic, dating, or sexual relationship with another person who is or was married to, in a domestic partnership with, divorced or separated from, or in a romantic, dating, or sexual relationship with the offender.
D.C.Code § 16–1001(6)(A), (B) (2011 Supp.).
(7) "Intimate partner violence" means an act punishable as a criminal offense that is committed or threatened to be committed by an offender upon a person:
 (A) To whom the offender is or was married;
 (B) With whom the offender is or was in a domestic partnership; or
 (C) With whom the offender is or was in a romantic, dating, or sexual relationship.
D.C.Code § 16–1001(7)(A)–(C) (2011 Supp.).
(9) "Intrafamily violence" means an act punishable as a criminal offense that is committed or threatened to be committed by an offender upon a person to whom the offender is related by blood, adoption, legal custody, marriage, or domestic partnership, or with whom the offender has a child in common.
D.C.Code § 16–1001(9) (2011 Supp.).

Moreover, if we read "interpersonal, intimate partner, or intrafamily" to limit each of the crimes listed, there would have been no point in adding the words "stalking, sexual assault, or sexual abuse" to the definition. *See Tuten v. United States,* 440 A.2d 1008, 1010 (D.C.1982) ("A statute should not be construed in such a way as to render certain provisions superfluous or insignificant."), *aff'd,* 460 U.S. 660, 103 S.Ct. 1412, 75 L.Ed.2d 359 (1983). The definitions of "interpersonal violence," "intimate partner violence," and "intrafamily violence" already encompass "act[s] punishable as a criminal offense," which surely include the crimes of stalking, sexual assault, and sexual abuse. *See* D.C.Code §§ 16–1001(6), (7), (9) (2011 Supp.), quoted in note 3, *supra.* There would be no apparent reason for the Council to adopt such broad definitions of interpersonal, intimate partner, and intrafamily violence, but then to repeat itself by referring to the particular crimes of stalking, sexual assault, and sexual abuse. The more natural reading, therefore, is that the adjectives "interpersonal, intimate partner, or intrafamily" modify only the closest noun, "violence."

It also is clear that the legislature intended in recent years to expand the reach of the civil protection remedy. In both 1995 and 2007, the Council incrementally expanded access to CPOs beyond typical family relationships. *See* Domestic Violence in Romantic Relationships Act of 1994, D.C. Law 10–237, § 2(a) (1995) (expanding definition of "intrafamily offense" to protect a petitioner who "shares or has shared a mutual residence" with an unrelated offender); Omnibus Public Safety Amendment of 2006, D.C. Law 16–306, § 206(a) (2007) (expanding definition of

"intrafamily offense" to protect a petitioner "[w]ho had been stalked or is being stalked by the offender").[4] Recognizing the Council's intent to expand the remedy, we have held that an "intrafamily" relationship was not always required to obtain a CPO under prior iterations of the statute. *See Shewarega v. Yegzaw,* 947 A.2d 47, 52 (D.C.2008) (rejecting "appellant's claim that the Intrafamily Offenses Act does not apply to his non-intimate relationship with Ms. Yegzaw ..."); *id.* ("Sharing a mutual residence need not coexist with any of the other relationships—kinship, legal custody, marriage, having a child in common, or a romantic relationship—on which an intrafamily offense may be predicated, for it is listed as an alternative to all of them.").

The Council's 2009 amendment continues this trend of providing broader access to civil protection orders while maintaining the section's historical location in the chapter on "Proceedings Regarding Intrafamily Offenses." At a public hearing held before the adoption of the current act, a witness from the domestic violence protection community proposed "an amendment [to] include[ ] victims of sexual assault outside existing intrafamily relationships as persons eligible for civil protection orders (CPOs)," and several other witnesses testified in support. D.C. Council, Report on Bill 17–55 at 7–9 (Nov. 25, 2008). Following the hearing, the Committee revised its draft bill by adding "stalking, sexual assault, [and] sexual abuse" to the definition of "petitioner," and it was this version of the bill that the Council adopted. *Id.* at 3.

We acknowledge the oddity that the broader portions of this definition, which allow petitioners to seek civil protection in circumstances where no intrafamily of-

4. Significantly, the trial court's alternate reading of the current statute would eliminate these previously-established civil protections

for victims of stalking, without any indication that the Council had intended to do so.

fense is alleged, are located in the D.C.Code chapter on "Proceedings Regarding Intrafamily Offenses," and the subchapter on "Intrafamily Proceedings Generally."[5] *See Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47, 128 S.Ct. 2326, 171 L.Ed.2d 203 (2008) ("[S]tatutory titles and section headings are tools available for the resolution of a doubt about the meaning of a statute.") (internal editing and quotation marks omitted). However, the placement of this revised definition was deliberate. As the Committee Report on the current law affirmed, "the need for a CPO [may] result[ ] from a relationship that is not, strictly speaking, intrafamily." D.C. Council, Report on Bill 17–55 at 2 (Nov. 25, 2008).

The act, as currently amended, permits victims of stalking, sexual assault, or sexual abuse to seek the protections of a CPO, but without conferring on them other rights linked to the separate definition of "intrafamily offense." D.C.Code § 16–1001(8) (2011 Supp.) (" 'Intrafamily offense' means interpersonal, intimate

partner, or intrafamily violence.").[6] This approach "distinguish[es] [intrafamily] relationships (which affect provisions elsewhere in the Code that apply to intrafamily offenses, e.g., mandatory arrest, landlord/tenant protections, custody presumptions, etc.)," D.C. Council, Report on Bill 17–55 at 2 (Nov. 25, 2008), while still affording civil protection to other vulnerable groups, including victims of stalking, sexual assault, and sexual abuse.

■ The result is that there now are two types of petitioners who may seek a civil protection order: alleged victims of "interpersonal, intimate partner, or intrafamily violence" and alleged victims of "stalking, sexual assault, or sexual abuse."[7]

## IV.

Because D.C.Code § 16–1001(12) and § 16–1003(a) permit "any person who alleges ... that he or she is the victim of ... stalking, sexual assault, or sexual abuse" to apply for civil protection, the decision of the trial court is reversed and

---

**5.** In a similar vein, at the TPO hearing, the trial judge questioned "why ... this [case] is a matter for Domestic Violence Court?" He denied petitioner's request for a CPO, suggesting that "the reason that we're here [in Domestic Violence Court] is to address the violence among certain relationships," and "as far as a domestic violence temporary protection order, I just don't see the relationship here that would permit that." However, the Council has defined "Domestic Violence Unit" in circular fashion to mean "any subdivision of the court" that "hear[s] proceedings under this subchapter [§§ 16–1001–1006]." D.C.Code § 16–1001(5) (2011 Supp.). Therefore, if the Council includes a type of proceeding within the Domestic Violence Unit's purview, that unit may adjudicate those claims, even if the facts of a particular case do not present domestic violence as we commonly understand it.

**6.** Unlike the definition of "petitioner" in § 16–1001, the definition of "intrafamily of-

fense" is cited multiple times throughout the D.C.Code. *See, e.g.*, D.C.Code §§ 2–1402.21(f)(2) (protection against housing discrimination), 14–310(a)(4) (domestic violence confidentiality privilege), 16–914(a)(2) (child custody and visitation determinations), 16–1031(a)(1) (mandatory arrests for domestic violence), 51–131(b) (unemployment benefits protection).

**7.** Of course, while both types of petitioners may apply for civil protection, a petitioner must still satisfy the substantive requirements outlined in D.C.Code § 16–1004(b)(1) (TPO— "that the safety or welfare of the petitioner ... *is immediately endangered by the respondent*") or § 16–1005(c) (CPO—"good cause to believe the respondent has committed or threatened to commit a criminal offense against the petitioner") in order to be granted that protection.

this case is remanded for further proceedings consistent with this opinion.

*So ordered.*