**Affirmed and Memorandum Opinion filed February 28, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-11-00886-CR

**SANTIAGO JIMMY DICKSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 1280036**

## M E M O R A N D U M   O P I N I O N

Appellant, Santiago Jimmy Dickson, appeals the denial of a motion for new trial following his conviction for aggravated sexual assault of a child under fourteen. *See* Tex. Penal Code Ann. § 22.021 (West 2011). He argues that the State presented insufficient evidence of his guilt and that his trial counsel's assistance was ineffective. We affirm.

BACKGROUND

In July of 2010, appellant visited a wooded park where all-terrain-vehicle (ATV) enthusiasts congregate to ride.[1]  There he met a family that included a father and his nine-year-old son (the complainant), two-year-old daughter, and fiancée.  An acquaintance of appellant's knew the family, and appellant spent part of the day riding in a group with his acquaintance, the family, and others.  The family's ATV could carry all four members, but near the end of the day, it broke down and had to be towed out of the park.

Appellant had never met the family before, but he agreed to drive the complainant out of the park while the rest of the family rode out with another group member.  Between five and ten ATVs formed a caravan, with appellant and the complainant at the end.  The father testified that when he and the rest of the family reached the parking lot, he loaded the family's inoperable ATV into his truck. He testified that, after being in the parking lot for ten minutes, appellant still had not returned with the complainant.  The fiancée testified that the father did not load his ATV at this point because he immediately noticed his son was missing and left to look for him.  Both agreed, however, that after returning to the parking lot, the father went looking for the complainant.  The father testified that he traveled along the same trail the group had followed out of the park until he reached the spot where the family's ATV broke down, but he never found the boy.

The fiancée testified that, shortly after the father left, appellant and the complainant returned.  Before appellant's ATV fully stopped, the complainant jumped from the ATV and "c[a]me[ ] bolting" to the family's truck where the

---

[1] Some witnesses at trial distinguished between "all-terrain vehicles" and "[u]tility vehicle[s]" or "UTVs."  For our purposes, this distinction is unnecessary; we use "ATV" to describe both.

fiancée was waiting. The boy got in the truck and closed the door. The fiancée testified that he began crying and said that he wanted to go home. She said that the truck had tinted windows obscuring the complainant from view, but appellant approached saying, "[H]e's fine. He's fine. He just got scared. He's fine." The father testified that, when he returned from his search, he observed the complainant crying hysterically. The father said that the complainant told him he had stopped to pee and was scared because he could not find his family.

At appellant's trial, appellant and his lifelong friend gave different accounts of the caravan's return to the parking lot. Appellant's friend testified that he was also in the caravan and that appellant arrived immediately behind him. He also testified that no one ever went looking for the complainant and that he never observed the complainant crying. Appellant testified that the complainant rode with him earlier in the day and that he dropped the boy off because appellant "had to go to the restroom." Appellant said that, when he rejoined the group, the father's ATV had broken down. According to appellant, the complainant got back on appellant's ATV and they continued riding with the rest of the group until they reached the parking lot.

At some point after July 8, 2010, the complainant visited his mother and stepfather. One evening, the complainant's stepfather observed him with "[b]oth hands in his pocket, toward his crotch area . . . pumping back and forth." The complainant had engaged in this behavior before, and his mother and stepfather had "told him he shouldn't be doing that. It's not something that a child nine years old should be doing." This time, the complainant's mother gave him a spanking and put him in his room.

A few minutes later, the stepfather went to the complainant's room, where the boy was playing video games. The stepfather was concerned and asked the

3

complainant if he had "ever been touched" or whether he "ever had this done [to him]." According to the stepfather, the boy started "bawling out crying" and said that someone had touched him "[w]hile he was with his daddy riding four-wheelers."

The police were contacted, and the complainant disclosed additional details of the assault to a forensic interviewer. He described "his family getting ready to leave, and a man coming up on a green four-wheeler and taking him into the forest . . . and the man putting his mouth on [the complainant's] private part." Police showed the complainant a photo array that included appellant's picture, but he did not identify his assailant. The complainant's father saw the same array and identified appellant as the man with whom the complainant rode when the family's ATV broke down.

At trial, the complainant gave a detailed account of the assault, but did not identify appellant as his assailant. The boy testified that the man who had assaulted him had an ATV that resembled the model and color of appellant's ATV. He testified that the incident occurred at the end of the day on the way to the parking lot. The complainant believed his parents were in the parking lot during the assault, and he cried because he feared that they would leave him. The complainant testified that, by the time the assailant returned him, his father had gone looking for him while his father's fiancée waited in the parking lot. The complainant said that, when his father returned, he told his father that the "man was taking a long pee."

The jury convicted appellant of sexually assaulting the complainant, and appellant retained new counsel, who filed a motion for new trial. The trial court reviewed the affidavits that appellant's new counsel submitted in support of the

4

motion, which did not include an affidavit from appellant's trial counsel.[2] The trial court denied the motion for new trial without hearing live testimony. Appellant appealed.

## ANALYSIS

Appellant presents five issues on appeal, which we consolidate into two. He argues that: (1) the evidence was insufficient to convict him; and (2) the trial court erred by denying his motion for new trial because he received ineffective assistance of counsel.

## I.     The evidence was sufficient to support appellant's conviction.

Appellant argues that the evidence was insufficient to prove beyond a reasonable doubt that he sexually assaulted the complainant, who never identified appellant as his assailant.

When reviewing the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to determine whether, based upon that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses. *Id.* We permit juries to draw multiple reasonable inferences from facts as long as each is supported by the evidence presented at trial. *Id.* The jury is not permitted to draw conclusions based upon speculation because doing so is not sufficiently based upon facts or evidence to support a finding beyond a reasonable doubt. *Id.* When the record

---

[2] In her affidavit, new trial counsel stated that she was unsuccessful in obtaining an affidavit from trial counsel, and she related the contents of a "short hurried conversation" in which trial counsel did not talk "about the issues of his representation [new trial counsel] wanted to discuss." There is no indication in the record that new trial counsel sought to compel trial counsel's testimony regarding those issues.

supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination. *Id.* at 525-26.

To prove that appellant committed the offense of aggravated sexual assault of a child, the state had to prove that appellant intentionally or knowingly caused the complainant's sexual organ to contact appellant's mouth. Tex. Penal Code Ann. § 22.021(a)(1)(B)(iii). It is the State's burden to prove each element of the offense beyond a reasonable doubt, not to exclude every conceivable alternative to a defendant's guilt. *Merritt*, 368 S.W.3d at 525. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Id.* Thus, circumstantial evidence alone can suffice to establish guilt. *Id.* In addition, the testimony of a victim, standing alone, is sufficient to support a conviction for aggravated sexual assault of a child. Tex. Code Crim. Proc. Ann. art. 38.07 (West 2012).

Here, the complainant testified that the man who gave him a ride after his father's ATV broke down pulled down the complainant's pants, put his mouth on the complainant's "private," and moved his head around. Although the complainant did not identify the man as appellant, the circumstances the complainant described surrounding his assault correspond to other witnesses' accounts of the day that the complainant rode on appellant's ATV. This circumstantial evidence sufficed to prove beyond a reasonable doubt that appellant sexually assaulted the boy.

The complainant testified that he only met his assailant once and that he rode on the man's ATV at the end of a full day at the park. This corresponds to testimony from appellant and the complainant's father that appellant only met the boy once and appellant gave him a ride at the end of the day. The complainant testified that the assault occurred during a ride to the parking lot; the complainant's

father, the fiancée, and appellant all testified that this is where appellant took the boy on their ride. The complainant said that his assailant's ATV was the last in a caravan and that he sat in front of his assailant on the ATV. A witness testified that appellant occupied this position in a caravan when he rode with the boy, and appellant testified that the complainant rode in front of him on the ATV. The complainant testified that, when he was assaulted, he believed his father and his father's fiancée had reached the parking lot already. The boy's father and the father's fiancée both testified that they reached the parking lot before appellant brought back the complainant. The complainant testified that, when his assailant finally returned him to the parking lot, his father was gone. The fiancée and the complainant's father both testified that, by the time appellant returned the boy, the boy's father had gone to look for him. The complainant testified that, on the day of his assault, when his father returned, he told his father that the man had been "taking a long pee." The complainant's father testified that, on the day the boy rode with appellant, the boy said he had "stopped to pee." Finally, the complainant testified that his assailant's ATV resembled the model and color of appellant's ATV.

Taken together, the corresponding details in the testimony of the boy and other witnesses permitted the jury to conclude beyond a reasonable doubt that the day of the complainant's assault and that of his ride with appellant were one and the same and that appellant assaulted the boy. Accordingly, we overrule appellant's first issue.

## II. The trial court did not abuse its discretion by denying appellant's new trial motion alleging ineffective assistance of counsel.

Appellant's brief details several episodes during his trial that he alleges demonstrate ineffective assistance. To prevail on his ineffective assistance claim, appellant must first show that trial counsel's performance fell outside the "'wide

7

range of professionally competent assistance.'" *Mata v. State*, 226 S.W.3d 425, 428 (Tex. Crim. App. 2007) (quoting *Strickland v. Washington*, 460 U.S. 668, 690 (1984).

Two procedural hurdles prevent us from concluding that appellant made such a showing on this record. First, appellant has failed to overcome the implied findings that support the trial court's ruling. Appellant made his ineffectiveness allegations in a new trial motion, which the trial court denied without issuing any findings of fact. We review this ruling for an abuse of discretion, reversing only if the trial judge's decision was clearly erroneous and arbitrary. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012). Our role is "to determine whether any reasonable view of the record, viewed in the light most favorable to the trial court's ruling, could support the trial court's implicit findings." *Id*. at 459. This same deferential review must be given to a trial court's implied determinations of historical facts even though they were based solely upon uncontroverted affidavits. *Id*. at 457. The trial court is free to disbelieve an affidavit, especially one unsupported by live testimony. *Id.*

In this case, many of appellant's ineffective assistance claims rest upon affidavits that the trial court implicitly discredited or historical facts that the trial court could have found never occurred. For example, appellant complains that trial counsel failed to adequately prepare his witnesses, but this allegation rests upon the affidavits of appellant's fiancée and lifelong friend, which the trial court implicitly discredited. Appellant's self-serving affidavit also stated that trial counsel failed to advise him of his rights to present witnesses at a sentencing hearing and, as a result, he agreed to the State's proposed twenty-five year sentence. But trial counsel had no opportunity to confirm or deny this allegation, and the trial court implicitly rejected it.

8

A second procedural hurdle is the lack of any record explanation from trial counsel for his decisions. In the absence of direct evidence to the contrary, we must strongly presume that counsel's conduct falls within a wide range of reasonably professional assistance. *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). "[I]n almost all cases," direct appeal is an inadequate vehicle for raising an ineffective assistance claim because the record is generally underdeveloped. *Id.*; *see also Massaro v. United States*, 538 U.S. 500, 504–05 (2003). Thus, "[a] substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Although a defendant may rebut the presumption of competence through proof that "the challenged conduct was so outrageous that no competent attorney would have engaged in it," *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (internal quotation marks omitted), prevailing on such a claim without trial counsel explaining his strategy is very difficult. *See id.* (failure to participate in voir dire did not overcome the presumption of competence).

Here, appellant's remaining complaints fail to allege conduct so outrageous that no competent attorney would have engaged in it. Specifically, without testimony from trial counsel, we cannot conclude that trial counsel was ineffective for: (1) failing to object to the prosecutor's allegedly improper comments during voir dire; (2) not eliciting favorable character evidence about appellant from seven witness who averred that they could have provided it; (3) not investigating appellant's allegation that a friend of the complainant's family attempted to extort money from him; (4) allowing the State to admit evidence of the complainant's masturbation habit; (5) not performing redirect examinations when they may have been helpful; (6) not striking a juror who believed that young children would not

lie about being sexually assaulted;[3] (7) not eliciting testimony on direct examination about a witness's prior criminal conviction; (8) not consulting experts about appellant's panic disorder or the veracity of child witnesses in sexual assault cases; (9) inadequately preparing appellant to testify at trial, with the result that appellant suffered a panic attack while testifying and the prosecutor's closing argument emphasized appellant's behavior; or (10) not objecting when the prosecutor propounded questions that arguably contained narrative, when the prosecutor arguably implied that he had a neutral role in the proceedings, when the prosecutor analogized the burden of proof to solving a "Wheel-of-Fortune" word puzzle, or when the prosecutor arguably framed portions of his closing argument in terms of his opinion. While the complaints regarding trial counsel's handling of appellant's panic disorder appear particularly troubling, this limited record does not allow us to determine whether counsel's performance was constitutionally deficient or whether it prejudiced the outcome of the trial.

We could speculate regarding why appellant's trial counsel made these decisions, but there is no need to do so because appellant has not rebutted the presumption of competence on this record. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *see also Lopez v. State*, 343 S.W.3d 137, 142–43 (Tex. Crim. App. 2011) (holding appellant failed to rebut presumption without speculating). We therefore overrule appellant's second issue.[4]

---

[3] It is unclear from appellant's brief whether he argues that allowing this juror on the panel was ineffective assistance or that the juror's presence deprived him of a fair trial. To the extent appellant now argues that the juror should not have been impaneled, he failed to preserve this argument by challenging the juror. *See Cardenas v. State*, 325 S.W.3d 179, 183 n.13 (Tex. Crim. App. 2010) (describing the requirements to preserve a challenge for cause).

[4] This disposition does not affect appellant's entitlement to submit his ineffective assistance complaints or other appropriate constitutional complaints for review on the merits in an application for a writ of habeas corpus. *Rylander v. State*, 101 S.W.3d 107, 111 n.1 (Tex. (Tex. Crim. App. 2003); *Bone v. State*, 77 S.W.3d 828, 837 n.30 (Tex. Crim. App. 2002).

## CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/s/    J. Brett Busby
         Justice

Panel consists of Chief Justice Hedges and Justices Boyce and Busby.

Do Not Publish — Tex. R. App. P. 47.2(b).